Argued and submitted November 1, 1983, affirmed August 28, 1984

STATE OF OREGON,
*Respondent on Review,*

*v.*

PAUL JULIAN MANEY,
*Petitioner on Review.*

(No. C81-07-33312; CA A22694; SC 29749)

688 P2d 63

Howard R. Lonergan, Portland, argued the cause for petitioner on review. With him on the briefs were Clint A. Lonergan and Richard L. Lonergan, Portland.

Robert E. Barton, Assistant Attorney General, argued the cause for respondents on review. With him on the briefs were David B. Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

CARSON, J.

622

## CARSON, J.

The sole issue this case presents is whether a murder victim who assisted in the apprehension and arrest of defendant and would have been expected to testify at defendant's trial, but had not yet testified nor been subpenaed, was a "witness in a criminal proceeding" under the aggravated murder statute.

Defendant's indictment for aggravated murder alleged that he shot a "witness in a criminal proceeding," in violation of ORS 163.095(2)(a)(E). A jury found him guilty. He was sentenced to life imprisonment and received as the enhanced penalty for an aggravated murder conviction a 20-year mandatory minimum sentence, without possibility of parole, work release or any form of temporary leave. ORS 163.105(2). On appeal, defendant asserted that the murder victim was not, in fact, a "witness in a criminal proceeding" within the meaning of the statute because, at the time of his death, the victim was not serving as a witness, nor was there any evidence that he had ever testified as a witness in a criminal proceeding related to defendant.[1] The Court of Appeals affirmed defendant's conviction without opinion. We affirm the Court of Appeals.

The murder victim in this case was a part-time security guard who, while on duty, assisted in the apprehension and arrest of defendant for shoplifting. Following defendant's apprehension, and in his presence, the victim filled out and signed the initial crime report sheet detailing the shoplifting incident. Defendant was arraigned and charged with theft in the second degree based on that incident. A trial date was set. The day following his arraignment on that charge, defendant received a copy of the crime report which the victim had signed as a witness to the incident. Approximately two months after his arraignment and two months before the trial date set for the shoplifting charge, defendant shot and killed the security guard. The state offered as evidence of defendant's motive for the murder that this arrest angered and alarmed him because he recently had been told by a judge, at a probation revocation hearing on an unrelated conviction, that if he were arrested and found guilty again, he would be sent to

---

[1] We find no merit in defendant's other assignments of error.

jail for three years. At trial, defendant's former girlfriend testified that defendant told her he killed the victim specifically to avoid going back to prison because the victim was the principal witness against him.

ORS 163.095 defines aggravated murder as murder which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2)(a) The victim was one of the following and the murder was related to the performance of the victim's official duties in the justice system:

"* * * * *

"(E) A juror or witness in a criminal proceeding;

"* * * * *."

This part of the aggravated murder statute contains two independent requirements: The victim must fit into one of the designated categories and the murder must be "related to the performance of the victim's official duties in the justice system." The statute, itself, does not provide a definition of a "witness in a criminal proceeding," nor does it explain the requisite relationship of the murder to the victim's official duties in the justice system.

The legislative history of ORS 163.095 indicates that the 1977 Oregon Legislative Assembly was cognizant of the ambiguity of the phrase "witness in a criminal proceeding."[2] Judge John C. Beatty, Jr., representing the Oregon Judicial Conference, testified before the Senate Committee on the Judiciary that this category of victim would have to be broader than merely someone murdered in the act of testifying, but that he could not say where the line would be drawn. He indicated that the parameters of this category would require judicial interpretation.[3]

---

[2] Among others, Senator Walt Brown wondered whether "witness in a criminal proceeding" applied to a witness who had not yet given testimony or to a witness who had already testified. He inquired whether testimonial knowledge of substantial facts of the crime was enough to bring someone within the witness category. Minutes, Senate Committee on the Judiciary 4 (June 1, 1977). *See also* Minutes, Senate Committee on the Judiciary 8 (June 2, 1977).

[3] Minutes, Senate Committee on the Judiciary 3 (June 2, 1977).

■ It is a well-settled rule that this court's duty is to interpret inexact terms in statutes in such a manner as to be consistent with legislative intent. ORS 174.020; *Bain v. Dept. of Rev.,* 293 Or 163, 170, 646 P2d 12 (1982). According to the legislative history of the aggravated murder statute, paragraph (2)(a) was enacted for the purpose of protecting the criminal justice system by deterring selected categories of murder which were deemed especially heinous.[4] These specially selected categories of heinous murders were perceived to justify the application of mandatory minimum sentences.

■ The phrase "in a criminal proceeding," which modifies "witness," reflects the legislative purpose to protect the criminal justice system and narrows the category to exclude witnesses in civil trials or administrative hearings.

A common sense reading of the phrase "witness in a criminal proceeding," coupled with its legislative history, indicates that it was intended to be broader than someone killed in the act of testifying under oath at a trial, deposition, or by affidavit. A construction of this phrase to include someone who has not yet testified, but who, because of his or her knowledge of the crime is expected to do so, harmonizes with the broad legislative purpose to protect the criminal justice system.[5] It is equally heinous (and perhaps more advantageous from a defendant's viewpoint) to murder someone with knowledge of the material facts of a crime, who is likely to be called to testify, before the person has the opportunity to do so. Such an interpretation is consonant with the legislative purpose to establish mandatory minimum sentences for murders which interfere with the effective operation of the criminal justice system.

The parties agree that a "witness in a criminal proceeding" should not be limited to someone who has given in-court testimony. The gist of defendant's argument is that a victim is not a "witness" under the aggravated murder statute unless he or she, at the very least, has been subpenaed to testify in a pending criminal proceeding. The state, on the

---

[4] Minutes, House Committee on the Judiciary 9 (May 10, 1977); Minutes, Senate Committee on the Judiciary 13 (June 1, 1977).

[5] We note that the common law rule that a criminal statute must be strictly construed in favor of an accused has been abolished in this state. ORS 161.025(2); *State v. Gilmore,* 236 Or 349, 354, 388 P2d 451 (1964).

other hand, argues that a person who observes the commission of a crime or who participates in a defendant's apprehension and arrest is a "witness in a criminal proceeding," because it is likely that he or she will be called upon to testify in the future.[6]

We reject defendant's argument that one is not a "witness" until one is served with a subpena to testify in a pending criminal proceeding. While the criminal code contains no general definition of "witness," several statutes relating to criminal trials suggest that the status of being a witness is *antecedent* to the process of being subpenaed. ORS 136.555 defines "subpena" as "[t]he process by which attendance of a witness before a court or magistrate is required." ORS 136.557 authorizes a magistrate before whom an information is laid or complaint made to issue subpenas for witnesses within the state. The Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings defines a witness under that act to "include a person whose testimony is desired in any proceeding or investigation by a grand jury or in a criminal action, prosecution or proceeding." ORS 136.623(1). Similarly, ORS 136.607 provides that persons deemed "material witnesses" on behalf of the state can be required to give written undertakings to ensure that they will appear and testify at trial or before a grand jury. These statutes support our conclusion that the term "witness in a criminal proceeding" includes someone who has not yet been subpenaed, but whose testimony is desired in a criminal proceeding or a grand jury investigation.[7]

---

[6] The state cites federal cases construing the federal statute prohibiting intimidation of a witness in the discharge of his duty in a federal judicial proceeding, 18 USC § 1503 (1970). This statute defines several distinct offenses and has been construed to operate both prospectively and retrospectively, that is, it prohibits both any interference with the witness's present or future testimony and any injury to a witness on account of his prior appearance or testimony. Cases construing 18 USC § 1503 uniformly have held that a person is a witness for the purposes of that statute "when he knows or is supposed to know material facts and expectedly is to be called to testify to them." *United States v. Jackson,* 513 F2d 456, 459 (DC Cir 1975); *Hunt v. United States,* 400 F2d 306, 307 (5th Cir 1968), *cert den* 393 US 1021 (1969).

[7] We recognize that the three Oregon statutes relating to bribing or tampering with witnesses could suggest a different construction of the phrase "witness in a criminal proceeding." ORS 162.265, 162.275 and 162.285 prohibit bribing or tampering with a "witness in any official proceeding, or a person he believes may be called as a witness." By stating these phrases in the alternative, a "witness" and a "person he believes may be called as a witness" comprise distinct categories. These statutes, however, are not in the same chapter of the criminal code as the aggravated murder

■■ We are not here required to define the outer limits of a "witness in a criminal proceeding." However, because the stated purpose of the aggravated murder statute is to protect the criminal justice system, we construe it to require more than that the victim possess knowledge of the material facts of a crime. For myriad reasons not all crimes which are observed or for which persons are arrested are brought before a grand jury or prosecuted. We believe the legislature intended that it also must be objectively likely that the person with that knowledge would have been summoned to testify to those facts in a criminal proceeding. Therefore, a "witness in a criminal proceeding" for purposes of ORS 163.095(2)(a)(E) includes someone who already has been summoned or has testified at some stage of a criminal proceeding, and someone who knows or is expected to know material facts of a crime and is likely to be summoned to testify about those facts at some stage of a criminal proceeding.

■■ The second element of ORS 163.095(2)(a), that the murder be "related to" the victim's official duties in the justice system, focuses on the defendant's purpose for the murder. It requires the state to prove a causal connection between the murder and the victim's status as a witness, juror, police officer or other targeted category. If, for example, a person intentionally kills someone without knowledge that the victim was a member of one of the designated classes, or for a reason unrelated to that status, the requisite causal connection would not have been met and a charge of aggravated murder would not have been stated. The requisite relationship could be shown by proving that the defendant's purpose was either to prevent the victim's future testimony as a witness, to retaliate for the victim's past testimony as a witness, or for some other reason directly related to the victim's status as a witness in a criminal proceeding.

■ In the present case, where the victim assisted in the apprehension and arrest of defendant and where he filled out the initial crime report sheet and signed it as a witness, the victim was someone who knew or was expected to know material facts of a crime. Because defendant had been arraigned on the charge and a trial date set, the victim was

statute and we are not constrained to consider their use of the word "witness" as controlling in our interpretation of ORS 163.095(2)(a)(E).

someone likely to be summoned to testify in defendant's criminal prosecution. Furthermore, sufficient evidence was presented at trial from which the jury could have determined that the murder was related to the victim's status as a witness, because it was specifically motivated to prevent him from testifying against defendant at his impending trial. Thus, we hold that this victim was a "witness in a criminal proceeding" within the meaning of ORS 163.095(2)(a)(E).

Affirmed.