Argued and submitted February 22, 1999, vacated in part; remanded for
resentencing; otherwise affirmed April 5, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## MARY LOUISE THOMPSON,
*Appellant.*

(10-95-01455; CA A94497)

998 P2d 762

Stephen J. Williams, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant appeals the trial court's judgment of conviction for six counts of hindering prosecution, ORS 162.325, one count of aggravated murder, ORS 163.095(2)(a)(E), and one count of burglary in the first degree, ORS 162.225. Defendant assigns four errors to the trial court's judgment. We affirm without discussion defendant's convictions of hindering prosecution and burglary in the first degree and address only her first two assignments of error: (1) whether the trial court erred in overruling defendant's objection and admitting testimony concerning the role of witnesses in juvenile proceedings; and (2) whether the trial court erred in denying defendant's motion for a judgment of acquittal on the charge of aggravated murder. Those assignments of error present the same question of statutory interpretation, namely whether the legislature intended for a witness in a juvenile delinquency proceeding to be considered a "witness in a criminal proceeding" as that phrase is used in ORS 163.095(2)(a)(E). We reverse defendant's conviction of aggravated murder and remand.

Relevant to the issue on appeal, defendant was indicted for aggravated murder pursuant to ORS 163.095. ORS 163.095 defines aggravated murder, in part, as murder under the following circumstances:

"(2)(a)  The victim was one of the following and *the murder was related to the performance of the victim's official duties in the justice system*:

"(A)  A police officer as defined in ORS 181.610;

"(B)  A correctional, parole or probation officer or other person charged with the duty of custody, control or supervision of convicted persons;

"(C)  A member of the Oregon State Police;

"(D)  A judicial officer as defined in ORS 1.210;

"(E)  *A juror or witness in a criminal proceeding*;

"(F)  An employee or officer of a court of justice; or

"(G)  A member of the State Board of Parole and Post-Prison Supervision." (Emphasis added.)

The state offered evidence establishing that defendant conspired to and arranged the murder of the victim because the victim was going to serve as a witness in a juvenile delinquency adjudication proceeding against defendant's son.

Defendant objected to the introduction of testimony concerning the duties of a witness in a juvenile delinquency proceeding, arguing that it was not relevant to the aggravated murder charge, because the aggravated murder statute requires the victim to be a witness in a "criminal proceeding," as distinct from a juvenile delinquency proceeding. Defendant argued that, although ORS 163.095 does not define "criminal proceeding," the definitions contained in the criminal code and the juvenile code establish that the legislature did not intend the aggravated murder statute to apply to witnesses in juvenile delinquency proceedings. The trial court overruled that objection, relying on *State v. Maney*, 297 Or 620, 688 P2d 63 (1984), which interpreted the phrase "witness in a criminal proceeding." At the close of evidence, defendant made a motion for judgment of acquittal on the same legal point. In denying the motion, the trial court again relied, in part, on *Maney*. Defendant was then convicted of aggravated murder pursuant to ORS 163.095(2)(a)(E) and sentenced to life without the possibility of release or parole as set forth in ORS 163.105(1)(b).

■ On appeal defendant and the state make essentially the same arguments as made below. Defendant argues simply that she could not have been convicted of aggravated murder because the victim was murdered as a consequence of his official role as a witness in a juvenile delinquency proceeding and not a "criminal proceeding." Although not offering a precise definition, the state contends that "criminal proceeding" should be read broadly as the "criminal justice system," not narrowly as a "criminal prosecution." The state places primary reliance on *Maney,* which it claims interpreted the phrase "criminal proceeding" as excluding "civil and administrative hearings, while including hearings that are part of the 'criminal justice system.'" In the alternative, the state relies on the context and legislative history of the statute, arguing that they establish the legislature's intent to include juvenile delinquency adjudications. In determining whether a juvenile adjudication is a "criminal proceeding" for

purposes of ORS 163.095, our role is to ascertain the legislature's intent in using that phrase. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). To accomplish that, we need only examine the text and context of the statute. *Id.*

The language of the statute is the best evidence of the legislature's intent. *Id.* ORS 163.095, adopted in 1977,[1] does not define the term "criminal proceeding." The state argues that the plain, natural and ordinary meaning of "criminal proceeding" includes juvenile delinquency proceedings. In some juvenile delinquency proceedings, juveniles are adjudicated for acts that, if committed by adults, would be crimes. *See* ORS 419C.005. *Black's Law Dictionary,* 448-49 (4th ed 1951) defines "criminal proceeding" as

> "[o]ne instituted and conducted for the purpose either of preventing the commission of crime, or for fixing the guilt of a crime already committed and punishing the offender; as distinguished from a 'civil' proceeding, which is for the redress of a private injury. * * * Strictly, a 'criminal proceeding' means some step taken before a court against some person or persons charged with some violation of the criminal law."

Thus, the state argues, because juvenile delinquency proceedings "invariably involve the violation of criminal laws, as opposed to civil disputes" and therefore implicate the traditional criminal concern over public injury, the plain, ordinary and natural meaning of "criminal proceedings" includes juvenile delinquency proceedings. We agree that, standing alone, the phrase can plausibly be so defined. However, that definition must remain plausible in light of the text and context of the statute. *See State v. Stoneman,* 323 Or 536, 545-46, 920 P2d 535 (1996).

We consider, as if written into the text of the statute, prior Supreme Court interpretations of the statute. *Stephens . v. Bohlman,* 314 Or 344, 350 n 6, 838 P2d 600 (1992). In *Maney,* the Supreme Court interpreted the phrase *"witness in a criminal proceeding"* in the context of the statute's requirement that the murder be related to the victim's official

---

[1] Or Laws 1977, ch 370, § 1.

duties in the justice system. There, it was undisputed that the proceeding in which the murder victim would have been a witness was a "criminal" one; the victim was expected to testify in a criminal prosecution for theft in the second degree. Thus, the dispositive issue was when a victim becomes a "witness" as that term is used in the statute. The court held that the requirement that the victim be a "witness" did not require the victim already to have been subpoenaed for or testified in a criminal proceeding but merely required that the victim be "someone who knows or is expected to know material facts of a crime and is likely to be summoned to testify about those facts at some stage of a criminal proceeding." *Id.* at 625-26.

The state places reliance on two observations made by the court in *Maney*. First, the court observed that the phrase "witness in a criminal proceeding" "exclude[d] witnesses in civil trials or administrative hearings." *Id.* at 624. By that observation, the state would have us conclude that the Supreme Court held that, by using the term "in a criminal proceeding," the legislature intended to divide the world of judicial proceedings into only three parts and that "criminal proceeding" must be interpreted very broadly as the "criminal justice system." The state claims that such an interpretation would include juvenile delinquency proceedings.[2]

■        That observation is *dictum*. The question of what is a "criminal proceeding" was not an issue in *Maney*, nor was it necessary in deciding when a person becomes a "witness" for purposes of the aggravated murder statute. The rule of prior construction does not apply to statutory construction that is *dictum*, *SAIF v. Allen*, 320 Or 192, 204, 881 P2d 773 (1994), but we generally will follow *dicta* that are helpful, *see State v. Jones*, 165 Or App 55, 60, 995 P2d 571 (2000). However, we

---

[2] *See, e.g.*, ORS 137.651(2) ("criminal justice system" includes, in part, all activities pertaining to the prosecution of offenses and the disposition or treatment of juveniles adjudicated to have committed an act that, if committed by an adult, would be a crime). That statute lends general support to the state's argument that the term "criminal justice system" can be intended to include juvenile proceedings; however, because that statute was amended in 1997 to apply specifically to the disposition or treatment of juvenile offenders, Or Laws 1997, ch 433, § 1, it provides little, if any, evidence of what the 1977 Legislature intended when it enacted the phrase "criminal proceeding" in ORS 163.095(2)(a)(E).

can, off-hand, think of several proceedings that transcend a strict tripartite division of proceedings. For example, termination of parental rights does not fit into one of the three types of proceedings identified in *Maney*.[3] What is more plausible is that the Supreme Court observed the legislature's intent simply to exclude witnesses in civil and administrative proceedings from subparagraph (2)(a)(E) of the statute. But we believe that is about as far as that observation can be taken on its face.

Second, the state relies on the court's explanation that "paragraph (2)(a) was enacted for the purpose of protecting the criminal justice system by deterring selected categories of murder which were deemed especially heinous." *Maney*, 297 Or at 624. The state contends that the court implicitly held that "criminal proceeding" is synonymous with "criminal justice system." However, the court explicitly articulated that in *Maney* it was not "required to define the outer limits" of the phrase "witness in a criminal proceeding." *Id.* at 626. Rather, the court explained that "because the stated purpose of the aggravated murder statute is to protect the criminal justice system," it construed the term "*witness*" "to require more than that the victim possess knowledge of the material facts of a crime[,]" but also that it is "objectively likely that the person * * * would have been summoned to testify to those facts in a criminal proceeding." *Id.* The holding in *Maney* does not interpret *criminal proceeding* to be synonymous with *criminal justice system*. *Maney* does not resolve the issue at hand.

Rather, the text of the statute lays out two independent requirements. *Id.* at 623. First, the victim must fit into one of the designated categories, *i.e.*, "witness in a *criminal* proceeding," and, second, the murder must be "related to the performance of the victim's official duties in the *justice system*." ORS 163.095(2)(a) (emphasis added). In *Maney*, the court observed that "in a criminal proceeding" was intended

---

[3] Another example would be civil commitments, which occur in a civil context, but also involve administrative processes and implicate liberty interests traditionally associated with criminal proceedings. "Special statutory proceedings," ORS 19.205, including some forfeiture actions, can also have either civil or criminal attributes. *See State v. Curran*, 291 Or 119, 628 P2d 1198 (1981).

to "narrow" the field of potential victims operating in the "justice system" to which the statute applies. *Id.* at 624.

We find it particularly significant that subparagraph (2)(a)(E) is unique in its articulation of "criminal proceeding." The fact that the legislature enumerated other categories that are not limited to "criminal" matters—*e.g.*, "judicial officer," ORS 163.095(2)(a)(D), and "employee or officer of a court of justice," ORS 163.095(2)(a)(F)—indicates that the legislature knows how to craft categories that protect the "justice system" broadly, including the "criminal" justice system, when it intends to do so. The legislature's knowing use of the term "criminal" in subparagraph (2)(a)(E) indicates its intent to narrow the protection afforded by that subparagraph to specifically "criminal" matters. However, that does not necessarily correlate to an intent to protect the "criminal justice system" where the legislature knows how to articulate a desire to protect the *"justice system"* and instead protects only "criminal *proceedings*."

■■ Next, we examine the context of the statute to determine the 1977 Legislature's intent in using the phrase. That context includes other related statutes as well as relevant judicial construction of those statutes. *State v. Gile,* 161 Or App 146, 149, 985 P2d 199 (1999). We find two areas particularly relevant as context. Again, ORS 163.095 was enacted in 1977, independent of the 1973 adoption of the Oregon Criminal Code. Because ORS 163.095 defines a *criminal* offense, the preexisting criminal code is a natural source for context. In addition, since the precise question at hand is whether the legislature contemplated juvenile delinquency proceedings as "criminal proceedings," the juvenile code existing at that time is proper context. The state argues, however, that neither the criminal code nor the juvenile code provides proper context. The state relies on *Maney* for the proposition that statutes enacted in a different chapter are not proper context. However, the Supreme Court observed only that such statutes are not "controlling." *Id.* at 625-26 n 7. Rather, the general rule is whether a statute may shed light on the statute in question. *See DLCD v. Jackson County*, 151 Or App 210, 220, 948 P2d 731 (1997), *rev den* 327 Or 620 (1998) ("context" contemplates a substantive relationship

between provisions and the contextual provision reflecting in some meaningful way on the intended meaning of the statute in question). We assume that the legislature was aware of the meanings of "criminal proceeding" and "juvenile proceeding" existing at the time of the enactment of ORS 163.095.[4] Thus, those meanings, while not controlling, are nevertheless relevant to whether the legislature intended to include juvenile delinquency proceedings in its use of "criminal proceeding" in the aggravated murder statute. *See also State v. Trice*, 146 Or App 15, 933 P2d 345, *rev den* 325 Or 280 (1997) (examining the juvenile code, as context, in determining whether a juvenile adjudication was a "sentence" for purposes of ORS 137.123).

The then-existing criminal code defined "criminal proceeding" as "any proceeding which constitutes a part of a criminal action or occurs in court in connection with a prospective, pending or completed criminal action." ORS 131.005(7) (1977). "Criminal action" was in turn defined as "an action at law by means of which a person is accused and tried for the commission of an offense." ORS 131.005(6) (1977). And last, ORS 161.505 (1977) defined an "offense" as

> "conduct *for which a sentence* to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. An offense is either a crime or a violation or an infraction." (Emphasis added.)

In its strongest contextual argument, the state contends that, since juvenile adjudications occur for *conduct* that, if the person was an adult, would be a crime, juvenile adjudications are offenses in the context of a criminal action or criminal proceeding. *See former* ORS 419.476(a). We find that rationale fundamentally flawed because the state's argument focuses only on the *conduct* involved. However, an "offense" is not defined as conduct alone but conduct that also carries a

---

[1] We refer to the 1977 version of the juvenile code as *former* ORS chapter 419. Most of those statutes were repealed by Oregon Laws 1993, chapter 33, section 373. Their provisions were re-adopted in 1993 and codified in ORS chapter 419C with modifications that do not alter our conclusions here. In 1995, the legislature again amended the code significantly. We do not comment on the effect of those amendments. Our discussion refers to the pre-1995 versions of the juvenile code, unless otherwise specified.

*sentence.* Juvenile adjudications do not result in the imposition of *sentences. See Trice,* 146 Or App at 20-21 (juvenile disposition is not a "sentence" for purposes of ORS 137.123); ORS 419.505 (1977) (court shall order "disposition" of the case); ORS 419.507 (1977) (upon finding child within jurisdiction of the juvenile court, disposition can include placement of child on probation with conditions for restitution and placement of child in legal custody of Children's Services Division). By definition, juvenile conduct that results in juvenile adjudication cannot be an "offense" as used in the criminal code.

That distinction is amplified by the juvenile code that provides context directly contrary to the state's argument. *Former* ORS 419.543 explicitly stated that an "adjudication by a juvenile court that a child is within its jurisdiction is not a conviction of a crime or offense."[5] Thus, the legislature was advised, when it enacted ORS 163.095, that juvenile proceedings did not concern crimes or offenses as those terms are considered in the criminal code.

We find the juvenile code persuasive in light of the Supreme Court's decision in *State ex rel Juv. Dept. v. Reynolds,* 317 Or 560, 857 P2d 842 (1993). In *Reynolds,* the court determined that juvenile adjudications are not "criminal prosecutions" for purposes of Article I, section 11, of the Oregon Constitution. *Id.* at 575. The state argues that "criminal proceeding" is a broader term than "criminal prosecution." We agree that the terms may not be synonymous. However, *Reynolds* strongly suggests that juvenile adjudications are not criminal proceedings because it highlights how juvenile proceedings are *sui generis* and cannot be compartmentalized into a "criminal" box. *Id.* at 575. Referring to the pre-1995 versions of the juvenile code, the *Reynolds* court explained that "[f]rom 1907 to the present, juvenile justice in Oregon has been based primarily on a 'rehabilitation' model, rather than on a 'due process' or 'crime control' model." *Id.* at

---

[5] ORS 137.712(6), enacted in 1997, provides that a "conviction" includes a juvenile court adjudication finding a person within the court's jurisdiction under ORS 419C.005. However, that definition, which post-dates the adoption of ORS 137.095 and of the juvenile and criminal codes, is limited to ORS 137.712, providing for the downward departure from presumptive sentences for certain offenses.

567. Indeed, the juvenile code was, and today still is, generally careful to avoid terms commonly used in adult criminal matters such as crime, indictment, prosecution, conviction, or sentence. A "petition" was filed alleging that a person under age 18 had committed an act that brought him or her "within the jurisdiction of the [juvenile] court." *Former* ORS 419.482. Such allegations were "adjudicated," and, if the "child" was found to be within the court's jurisdiction, then the court ordered the proper "disposition" of the child. *See former* ORS 419.500. The court explained that the "clear and unequivocal" message of the juvenile code was to approach "each child's alleged delinquency as an equitable problem rather than as a criminal problem," and that the "rehabilitation of children in trouble is a *family* affair. In no way is the adult criminal justice system comparable to that model." *Reynolds*, 317 Or at 573-74 (first emphasis in original, second emphasis added).

Of course, there are similarities between the juvenile and adult criminal schemes. For example, juvenile adjudications can result in the deprivation of a child's liberty. *See id.* at 572-73 (discussing similarities); *Trice*, 146 Or App at 19-20 (same). The fact that juvenile adjudications play a role in sentencing in adult convictions because they may be used to calculate a defendant's criminal history score, *see State v. Stewart/Billings*, 321 Or 1, 10, 892 P2d 1013 (1995), indicates that juvenile adjudications are at least relevant to the adult criminal justice system.

Recently, in *Gile*, we examined whether the legislature intended a dispositional judgment based on findings of guilt except for insanity to be considered a "conviction" for the purposes of two fee statutes. There, we found significant the fact that

"ORS 161.295 provides that a person *is not responsible* for 'criminal conduct' if he meets the rest of the insanity defense test. *Before the question of whether the person is responsible or not need arise, the evidence has to prove criminal conduct.* Criminal conduct means an act or omission and its accompanying culpable mental state." 161 Or App at 154-55 (quoting *State v. Olmstead*, 310 Or 455, 464-65, 800

P2d 277 (1990) (quoting Minutes, Senate Judiciary Committee 8 (June 29, 1983)) (internal quotation omitted, first emphasis in original, second emphasis added).

The crucial distinction here was highlighted by the *Reynolds* court:

"In summary, in the jurisdictional phase of a delinquency proceeding * * * *the issue is not whether the child should be punished for his or her conduct but, rather, whether the statutory grounds for jurisdiction have been established* and, if so, what disposition is in the child's best interests. Juvenile courts are concerned with rehabilitation, not punishment. If the state wishes to prosecute a child criminally, it must do so by transferring the child to an adult criminal court." 317 Or at 574 (emphasis added).

*Former* ORS 419.533 provided a judicial waiver procedure to effect that transfer to adult criminal court on an individual basis. Under that procedure, the court could transfer jurisdiction over a youth within certain ages to adult criminal court if retaining juvenile jurisdiction would not serve the best interests of the child because the child was not amenable to rehabilitation. *Id.* In order to attach criminal responsibility, the 1985 amendments more explicitly instructed the court to consider whether the youth was "of sufficient sophistication and maturity to appreciate the nature and quality of the conduct involved." *Former* ORS 419.533(1)(c) (1985). The 1995 amendments, which added a legislative waiver section, extended transfers to adult criminal court for certain categories of serious person-to-person crimes, which by their nature implicate culpability. ORS 137.707. Those provisions indicate the legislative belief that *criminal* responsibility should attach to juveniles under either individual circumstances or, now, categorically for serious crimes. More importantly, the fact that the waiver provisions are based in part on concepts of culpability, responsibility, and opportunity for rehabilitation indicates that the legislature believes that juvenile court is not an appropriate venue for such matters.

■  The distinction, then, is that the entire jurisdiction of the juvenile court depends *first* on whether the youth should be held responsible, *i.e.*, criminally responsible, not on whether the youth's "criminal" conduct should be *excused* after the fact *because* he or she is a juvenile. Adjudications

within a juvenile court therefore cannot be "criminal prosecutions," and the matters considered within such adjudications cannot fairly be considered criminal. It follows, then, that juvenile delinquency proceedings are not criminal proceedings.

■     Given that sharp distinction built into the juvenile and criminal codes, we find it implausible that the 1977 Legislature, nevertheless, considered "criminal proceeding" to include juvenile adjudication proceedings. It follows, then, that the trial court erred in denying defendant's motion for acquittal on the aggravated murder charge on the ground that the state did not prove aggravated murder as defined in ORS 163.095(2)(a)(E). To the extent the trial court erred in admitting testimony about the role of a witness in a juvenile delinquency proceeding over a relevancy objection,[6] that error is harmless. We do not believe that that irrelevant evidence had any tendency impermissibly to affect the jury's consideration of defendant's guilt for murder, hindering prosecution, or burglary.

Judgment of conviction for aggravated murder, ORS 163.095(2)(a)(E), vacated; remanded for entry of judgment of conviction for murder, ORS 163.115, and for resentencing; otherwise affirmed.

---

[6] The state argues, credibly, that the testimony was relevant to a number of other facts, namely that defendant had a motive for murder, that she attempted to hinder her son's juvenile adjudication, and that she aided and abetted the charged crimes.