Argued and submitted May 23, 2002, reversed and remanded for reconsideration
February 19, 2003

## In the Matter of the Compensation of
## Shannon T. Holdren, Claimant.

### Shannon T. HOLDREN,
### *Petitioner,*

*v.*

### SAIF CORPORATION
### and Theodore R. Hansen,
### *Respondents.*

### 00-07387; A115167

63 P3d 1238

Thomas M. Cary argued the cause for petitioner. With him on the briefs was Cary, Wing, Bloom & Edmunson, P.C.

David Runner argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Claimant seeks review of a Workers' Compensation Board order that affirmed an order of the administrative law judge (ALJ) and held that claimant was not entitled to recover permanent partial disability (PPD) compensation payments that were due from July 2000, when claimant completed an authorized training program (ATP), through November 2000, when claimant's PPD was redetermined and reduced. We review for errors of law, ORS 183.482(8), and reverse.

The facts in this case are undisputed. Claimant was injured in August 1997, and his claim was accepted. The claim was first closed by determination order in November 1998. Both SAIF and claimant requested reconsideration. An order on reconsideration was entered in April 1999 setting the dollar value of the PPD award at $33,544. That award became final and monthly payments began.

In April 1999, claimant began his ATP and the payments on his PPD award were suspended pursuant to ORS 656.268(9) (1997). After claimant completed his ATP in July 2000, SAIF did not resume monthly payments of the permanent disability award until after November 2000, when SAIF issued a notice of closure that redetermined and reduced claimant's PPD payments.

Before the ALJ, SAIF conceded that it was legally required to resume payment of the PPD award after claimant's completion of the ATP until the claim was reclosed. The ALJ agreed but denied claimant's request for the four monthly installments of PPD payments. As a result of SAIF's refusal to make the PPD payments, however, the ALJ penalized SAIF in an amount "equivalent to 25 percent of the four monthly payments due during that period." The board adopted and affirmed the ALJ's order.

■■ The issue in this case is whether, once the pre-ATP determination order awarding PPD became final, claimant was entitled to the payments that had become due between claimant's completion of the ATP in July 2000 and when

SAIF issued a notice of closure in November 2000 and claimant's PPD was redetermined and reduced. In support of the board's order, SAIF asserts that, during the time between his completion of the ATP and the redetermination, claimant's entitlement to PPD was procedural only and to require payment pursuant to the original determination order would result in an overpayment. Claimant argues that, under ORS 656.268(9)[1] and OAR 436-060-0040(2), he is substantively entitled to the payments initially awarded.

ORS 656.268(9) provides, in part:

"*If*, after the determination made or notice of closure issued * * * *the worker becomes enrolled and actively engaged in training* * * * *any permanent disability payments due under the determination or closure shall be suspended,* and the worker shall receive temporary disability compensation while the worker is enrolled and actively engaged in the training. *When the worker ceases to be enrolled* and actively engaged in the training, *the Department of Consumer and Business Services shall redetermine the claim* pursuant to this section if the worker is medically stationary or if the worker's accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7). The redetermination shall include the amount and duration of temporary total or temporary partial disability compensation. *Permanent disability compensation shall be redetermined for unscheduled disability only.* If the worker has returned to work or the worker's attending physician has released the worker to return to regular or modified employment, the insurer or self-insured employer may redetermine and close the claim under the same conditions as the issuance of a determination order by the Department of Consumer and Business Services."

(Emphasis added.)

OAR 436-060-0040(2) provides, in part:

"*The insurer shall* stop temporary disability compensation payments and *resume any award payments suspended pursuant to ORS 656.268(9) upon the worker's completion or ending of the training* * * *. If no award payment remains

---

[1] All citations are to the 1997 versions of the statutes and administrative rules.

due, temporary disability compensation payments shall continue pending a subsequent determination order by the Division. However, if the worker has returned to work, the insurer may reevaluate and close the claim without the issuance of a determination order by the Division."

(Emphasis added.)

Under OAR 436-060-0040(2), SAIF was required to resume payment of PPD originally awarded upon claimant's completion of the ATP. SAIF asserts, however, that, pursuant to ORS 656.268(9), those PPD payments are "procedural" only, because they "are subject to reduction by the post-ATP award." SAIF argues that, under *SAIF v. Sweeney*, 115 Or App 506, 509-11, 839 P2d 254 (1992) (*Sweeney I*), *modified on recons*, 121 Or App 142, 854 P2d 487 (1993) (*Sweeney II*), the pre-ATP award is effective only until the claim is redetermined under ORS 656.268(9). Once the claim is redetermined, SAIF argues, "the employer no longer has a duty to comply with the order granting the pre-ATP award." SAIF further contends that, under *SAIF v. Coburn*, 159 Or App 413, 418, 977 P2d 412, *rev den*, 329 Or 527 (1999), the pre-ATP award is ineffective after redetermination "even if the original award has become final by operation of law and has been fully paid."

In order to understand SAIF's "procedural/substantive" argument, an analysis of our decisions in *Lebanon Plywood v. Seiber*, 113 Or App 651, 833 P2d 1367 (1992), and *Coburn* is helpful. In *Lebanon Plywood*, the "[c]laimant's * * * physician determined that he was unable to work after May 26, 1988, and that he became medically stationary on November 23, 1988. The claim was closed by a determination order on June 2, 1989, with an award of permanent partial disability." 113 Or App at 653. The employer did not pay temporary disability benefits and the board

"held that claimant was entitled to temporary benefits from May 26, 1988, until November 23, 1988. * * * However, the [b]oard ruled that, had employer begun paying the benefits when due on May 26, it would have been required to continue payments until the claim was closed by the determination order."

*Id.* The board ordered the employer "to pay temporary benefits for the period from May 26, 1988, through June 2, 1989, the date of the determination order." *Id.* We ultimately held that "[p]ayment of temporary disability benefits beyond the medically stationary date is a consequence of the administrative process of claim closure and is not an entitlement." *Id.* at 654.

In *Coburn*, SAIF accepted the claimant's claim "and ultimately closed it by a notice of closure in January 1995, with an award of 42 percent unscheduled permanent partial disability. * * * SAIF paid the award in a lump sum." 159 Or App at 415. The claimant's permanent disability award was reduced after his participation in an ATP but the benefits had already been paid. We held that in paying the full amount due under the original award, SAIF had not made an overpayment because, at the time SAIF made the payment, the claimant was substantively entitled to those benefits. In contrast, in *Lebanon Plywood*, the board had incorrectly ordered the employer to pay benefits for temporary disability beyond the date to which the claimant was substantively entitled to benefits. Thus, we characterized the payments in *Lebanon Plywood* as "procedural" entitlements. This case is more like *Coburn*. Claimant had an award of compensation and was therefore substantively entitled to the payments that became due before his award was redetermined.

In *Atchley v. GTE Metal Erectors*, 149 Or App 581, 945 P2d 557, *rev den*, 326 Or 133 (1997), we further examined the distinction between procedural and substantive entitlements to benefits. The claimant in *Atchley* was found to be medically stationary, after which a notice of closure was issued. *Id.* at 583. The claimant began an ATP on January 3, 1995, and "the insurer reinstituted payment of temporary total disability (TTD) benefits. [The c]laimant completed the ATP on September 18, 1995, and the insurer suspended payment of TTD benefits at that time." *Id.* Subsequently, a determination order issued and reclosed the claim and awarded temporary disability from January 3 through September 18, 1995. *Id.* The claimant argued that the insurer should not have suspended TTD payments on September 18, 1995,

because pursuant to an administrative rule, he was substantively entitled to a continuation of those benefits until the issuance of a redetermination order.

We explained that "the general distinction between a substantive and procedural entitlement is that a substantive benefit is one that is made explicit and unconditional by statute, while a procedural benefit is conditional, arising solely from the vagaries of claim processing." *Id.* at 585; *see also Menasha Corp. v. Crawford*, 332 Or 404, 29 P3d 1129 (2001). We agreed with the claimant that he had a substantive entitlement to temporary disability benefits because his entitlement was explicitly mandated under what is now OAR 436-060-0040(2). We held that

> "[t]he rule requires the insurer to continue to pay temporary disability benefits during the period between completion of a training program and issuance of a redetermination order if the worker is medically stationary, is not entitled to additional permanent disability awards and is not working. Further * * * the regulation makes such payments unconditional. * * * Generally, administrative rules and regulations have the same regulatory force as statutes. Because claimant was entitled substantively to temporary disability payments during that period, the [b]oard erred in applying *Lebanon Plywood* and in denying claimant temporary benefits for the period in question."

*Id.* at 586 (internal citations omitted).

SAIF argues that *Atchley* is distinguishable from this case because "PPD payments under the rule are conditional. They are subject to reduction by the post-ATP award pursuant to ORS 656.268(9)." SAIF argues that the PPD payments due after completion of an ATP and before redetermination are therefore procedural because they are "subject to the 'vagaries of claims processing.'"

■     We disagree. In this case, once the original PPD award became final, it remained operative until claimant's award was redetermined and reduced. OAR 436-060-0040(2) mandates that payments on the award resume after completion of an ATP. *Sweeney I*, 115 Or App at 508. The redetermined award therefore has prospective effect only and cannot

operate retroactively to preclude recovery of the amounts of PPD due under the rule pursuant to the original award.

SAIF asserts that we are misreading our opinions in *Sweeney I* and *Sweeney II*. There we considered both ORS 656.268(9) (then numbered ORS 656.268(5)) and OAR 436-060-0040(2) and held that "the employer is *obligated to resume payment of the initial award until the claimant's extent of disability is redetermined.*" *Sweeney I*, 115 Or App at 510-11 (emphasis added). We also held that, although the "employer must comply with the original determination order unless and until claimant's disability is re-evaluated, we do not agree that, in its re-evaluation, employer may not reduce the extent of disability." *Id.* at 511.

In *Sweeney II*, we reaffirmed that a claimant's benefits under a final PPD award are, until redetermination, substantive entitlements. We explained, however, that *Sweeney I* was incorrect to the extent that it held "that a notice of closure is not effective until the time to challenge it expires or until it is replaced by a determination order," *Sweeney II*, 121 Or App at 144, concluding that "a notice of closure is effective upon its issuance." *Id.* We said:

> "[B]ecause the notice of closure was issued before employer was obligated to begin payment under the original determination order, employer's issuance of its notice of closure effectively reduced the award and excused employer from payment under the original award. *Had payment under the original determination order come due, employer would have been obligated to make the lump sum payment required by that award.*"

*Id.* at 145 (emphasis added).

The above quoted statement was *dictum* that related only to a penalty and attorney fee issue. Although SAIF is correct that the emphasized portion of the quoted material is *dictum*, SAIF is incorrect that we were referring to a penalty and attorney fee issue; the penalty and attorney fee issues addressed in *Sweeney I* are not even discussed in *Sweeney II*. The statement, *dictum* as it was, expressed our view that, had the payments become due before the notice of closure, the employer would have been obligated to pay them. Here,

claimant's PPD benefits on the original award became due before the benefits were redetermined.

■        Furthermore, the *dictum* in *Sweeny II* is persuasive. *See State v. Thompson*, 166 Or App 370, 375, 998 P2d 762, *rev den*, 331 Or 192 (2000). The policy underlying the requirement in OAR 436-060-0040(2) that PPD payments resume after a claimant's ATP is completed is to ensure that an injured worker receive "fair, adequate and reasonable income" to support the worker and any dependents. ORS 656.012(2)(a). Until PPD is redetermined, it is presumed that the claimant has continued to suffer the same impaired earning capacity. Claimant's entitlement to benefits for PPD was substantive, and the board erred in failing to order SAIF to make PPD payments that were due from July 2000, when claimant completed the ATP, to November 2000, when the PPD award was redetermined.

Reversed and remanded for reconsideration.