277 P.3d 564 (2012)
249 Or. App. 321
In the Matter of N.R.L., a Youth.
STATE of Oregon, Respondent,
v.
N.R. L., Appellant.
J090305; A144789.
Court of Appeals of Oregon.
Argued and Submitted November 7, 2011.
Decided April 11, 2012.
Christa Obold-Eshleman argued the cause and filed the briefs for appellant.
Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.
Before SCHUMAN, Presiding Judge, and WOLLHEIM, Judge, and NAKAMOTO, Judge.
NAKAMOTO, J.
Youth appeals the juvenile court's judgment that he pay restitution in the amount of $114,071.13. Youth argues that the juvenile court erred in denying his motion to empanel a jury because Article I, section 17, of the Oregon Constitution entitled him to a jury trial on the issue of restitution. Youth contends that the amendments to the restitution statute, ORS 419C.450, changed the statute's purpose from penal to "quasi-civil," which *565 therefore requires compliance with Article I, section 17. Contrary to youth's position, in a juvenile proceeding, the youth offender's obligation to pay restitution to a victim remains penal in nature, despite the statutory amendments; restitution is not a quasi-civil recovery device. We affirm.
The following facts are not in dispute. Youth unlawfully entered a warehouse and damaged property. Youth admitted to committing acts that, if committed by an adult, would constitute burglary in the second degree and criminal mischief in the first degree. Before the dispositional hearing, youth moved for a jury trial and argued that he was entitled to a jury trial for the determination of restitution pursuant to Article I, section 17. The juvenile court denied youth's motion for a jury trial and ordered restitution in the following amounts: $5,000 to the State of Oregon on behalf of North Pacific Management; $5,000 to the state on behalf of Oregon Worsted; and $15,023.25 and $89,047.88 to the state on behalf of Liberty Mutual.
On appeal, youth reprises his argument that, because the restitution statute for juvenile proceedings provides victims with a quasi-civil recovery device, he was entitled to a jury trial on restitution under Article I, section 17. We review the juvenile court's interpretation of Article I, section 17, for legal error. State v. Rangel, 328 Or. 294, 298, 977 P.2d 379 (1999).
Article I, section 17, provides that, "[i]n all civil cases the right of Trial by Jury shall remain inviolate." Or. Const., Art. I, § 17. "In analyzing the meaning of a provision of the Oregon constitution, [the] court looks to the specific wording of the provision, the case law surrounding it, and the historical circumstances that led to its enactment." Lakin v. Senco Products, Inc., 329 Or. 62, 68, 987 P.2d 463 (1999), clarified on recons., 329 Or. 369, 987 P.2d 476 (1999). In Lakin, the court explained that a person has the same right to jury trial in a civil case as he or she would have had in 1857, when the Oregon Constitution was adopted. See id. at 72, 987 P.2d 463("[T]he framers of the Oregon Constitution clearly understood the meaning of the right to a jury trial in a civil case and that they intended that that right would remain * * * secure against violation or impartment."). Thus, "a jury trial is guaranteed only in those classes of cases in which the right was customary at the time the constitution was adopted or in cases of like nature." Molodyh v. Truck Insurance Exchange, 304 Or. 290, 295, 744 P.2d 992 (1987) (citing Cornelison v. Seabold, 254 Or. 401, 404-05, 460 P.2d 1009 (1969)).
To determine whether cases are of like nature, courts must look at "the particular issue in the proceeding rather than the controversy." See Salem Decorating v. Natl. Council on Comp. Ins., 116 Or.App. 166, 170, 840 P.2d 739 (1992), rev. den., 315 Or. 643, 849 P.2d 524 (1993) (right to a jury trial exists where "the issue in this proceeding involves the resolution of a premium audit dispute under a statutory procedure that was established by the legislature in 1987"). Therefore, the relevant inquiry in this case is whether an award of restitution under ORS 419C.450 is the type of issue to which the right to a jury trial would have attached when Article I, section 17, was adopted.
In Oregon, juvenile delinquency proceedings were created by statute, not by common law, and did not even exist when Article I, section 17, was adopted. In fact, before the end of the nineteenth century, the term "delinquency" was unknown at common law. State ex rel. Juv. Dept. v. Fitch, 192 Or.App. 56, 60, 84 P.3d 190, rev. den., 337 Or. 282, 96 P.3d 347 (2004). Rather, under common law "[j]uveniles under the age of seven were held legally incapable of forming criminal intent, while those over the age of 14 were held fully responsible for their actions." Id. In the late 1880s, the legislature enacted Oregon's first statute granting "trial courts limited discretion to treat juveniles differently from adults." Id. at 61, 84 P.3d 190. In 1907, Oregon created its first juvenile court system that was separate from the criminal system used for adults. Id. (citing State ex rel. Juv. Dept. v. Reynolds, 317 Or. 560, 567-68, 857 P.2d 842 (1993)). However, the juvenile court did not have exclusive jurisdiction in juvenile matters and exercised concurrent jurisdiction with adult courts. Reynolds, 317 Or. at 568, 857 P.2d 842. In 1959, the legislature *566 created a separate juvenile court system with exclusive jurisdiction over matters involving children under 18 years old. Id. at 569, 857 P.2d 842. That system remains in place today, with an exception created by Ballot Measure 11 for juveniles from 15 to 17 years old who are charged with certain serious felonies. See ORS 137.707; ORS 419C.005.
The juvenile court system still bears many similarities to the adult criminal justice system. Reynolds, 317 Or. at 572-73, 857 P.2d 842 (discussing similarities); State v. Thompson, 166 Or.App. 370, 380, 998 P.2d 762, rev. den., 331 Or. 192, 18 P.3d 1099 (2000) (same); State v. Trice, 146 Or.App. 15, 19-20, 933 P.2d 345, rev. den., 325 Or. 280, 936 P.2d 987 (1997) (same). Nevertheless, Oregon courts have held that juvenile proceedings are sui generis, i.e., these proceedings are unique and neither criminal nor civil. Reynolds, 317 Or. at 575, 857 P.2d 842 ("[T]he legislature so changed the way that a juvenile is treated as to create a proceeding that is sui generis."); see also Thompson, 166 Or.App. at 382, 998 P.2d 762 ("[J]uvenile delinquency proceedings are not criminal proceedings."); Fitch, 192 Or.App. at 64, 84 P.3d 190(concluding that "juvenile adjudications are not the legal equivalent of criminal prosecutions").
Because juvenile delinquency proceedings are sui generis and did not exist when Article I, section 17, was adopted in 1857, youths generally are not entitled to a trial by jury in such proceedings. See Reynolds, 317 Or. at 574, 857 P.2d 842 ("noting that no federal or Oregon authority heretofore has required a jury trial in juvenile court" under either Article I, section 11 (criminal jury trial) or section 17 (civil jury trial)). Youth argues, however, that the determination of a restitution award specificallynot a juvenile delinquency proceeding generallyis "of like nature" to claims that existed at common law and were tried by jury at the time Article I, section 17, was adopted. Specifically, youth asserts that the issue of damages for the destruction of a victim's property is "of like nature" to a civil conversion or trespass claim.
Oregon appellate courts have not previously considered the issue youth now raises i.e., whether the award of restitution in a juvenile delinquency proceeding is "civil" or "penal" in nature. In the adult criminal context, though, the Supreme Court has held restitution to be a sentencing device, not a "quasi-civil recovery device." See State v. Dillon, 292 Or. 172, 180, 637 P.2d 602 (1981) (analyzing the penal nature of ORS 137.103 to 137.109 (1977)); see also State v. Hart, 299 Or. 128, 138-39, 699 P.2d 1113 (1985) (analyzing whether the same restitution statutes entitled the defendant to a jury trial). Notwithstanding certain similarities between restitution awards and civil damages awards, the court in Dillon held that civil law concepts were inapplicable to criminal restitution awards because the court's "primary focus * * * is on the rehabilitative or deterrent effect the sentence will have on the defendant, not the extent to which the victim will be compensated." 292 Or. at 181, 637 P.2d 602. Indeed, the court recognized in Dillon that the criminal restitution statute "borrows from civil law in that it limits the type and amount of restitution to that which could be recovered as special damages in a civil suit," id. at 179, 637 P.2d 602, but characterized that borrowing as "merely a limitation of criminal sentencing authority" to order "whatever recompense it deems would have rehabilitative and deterrent effect," id. at 180, 637 P.2d 602.
In Hart, the court adhered to the view that an award of restitution as part of a criminal sentencing proceeding is not tantamount to a civil award:
"`[R]estitution was clearly not intended to be the equivalent of a civil award. For example, it does not necessarily fully compensate the victim.* * * Unlike a civil recovery, defendant cannot be required to pay beyond his ability to pay. Instead, * * * a restitution order does not impair a person's right to bring a civil action against the defendant * * *. Thus, restitution must be understood as an aspect of criminal law, not as a quasi-civil recovery device.'"
Hart, 299 Or. at 139, 699 P.2d 1113 (quoting Dillon, 292 Or. at 179-80, 637 P.2d 602) (brackets in Hart). "The theory of restitution," the court explained, "is penological in *567 nature: It is intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between [the] criminal activity and the damage suffered by the victim." Hart, 299 Or. at 138, 699 P.2d 1113 (citing Dillon, 292 Or. at 179, 637 P.2d 602).
Subsequently, in State v. Hval, 174 Or. App. 164, 25 P.3d 958, rev. den., 332 Or. 559, 34 P.3d 1177 (2001), this court determined whether a restitution award pursuant to ORS 811.706, part of the Oregon Vehicle Code, provided a defendant with the right to a jury trial. ORS 811.706 provides:
"When a person is convicted of violating ORS 811.700 or 811.705, the court, in addition to any other sentence it may impose, may order the person to pay an amount of money equal to the amount of any damages caused by the person as a result of the incident that created the duties in ORS 811.700 or 811.705."
Because ORS 811.706 is significantly similar to the criminal restitution statute, ORS 137.106, the court considered both statutes in its analysis. Hval, 174 Or.App. at 176-81, 25 P.3d 958. The court identified three characteristics of a conventional award of criminal restitution, describing them as the "earmarks of a penal sanction." Id. at 180-81, 25 P.3d 958. First, an award of restitution is "discretionary with the court, both in its imposition and its amount." Id. at 181, 25 P.3d 958. Second, "the person who will receive the award [the victim] does not receive it as a matter of right, nor will that person necessarily be compensated in full." Id. Lastly, the restitution statute is "imposed as an aspect of a defendant's sentence, to serve rehabilitative and deterrent purposes." Id. Because of the predominately penal function of the award authorized by ORS 811.706, the court held that the defendant was not entitled to a civil jury trial for the imposition and the determination of the amount of the restitution award. Id.
In 2003, after Hval was decided, the legislature amended both the criminal and the juvenile restitution statutes. ORS 137.106 (1999), amended by Or. Laws 2003, ch. 670, § 1; ORS 419C.450 (2001), amended by Or. Laws 2003, ch. 670, § 4. As amended, ORS 419C.450 provides, in part:
"(1)(a) It is the policy of the State of Oregon to encourage and promote the payment of restitution and other obligations by youth offenders as well as by adult offenders. In any case within the jurisdiction of the juvenile court * * * in which the youth offender caused another person any physical, emotional or psychological injury or any loss of or damage to property, the victim has the right to receive prompt restitution. * * * If the court finds from the evidence presented that a victim suffered injury, loss or damage, in addition to any other sanction it may impose, the court shall:

"(A) Include in the judgment a requirement that the youth offender pay the victim restitution in a specific amount that equals the full amount of the victim's injury, loss or damage as determined by the court."
ORS 419C.450(1)(a)(A) (emphases added.) According to youth, the amendments to the juvenile restitution statute removed the "distinctive earmarks of penal sanctions" that were the basis of our holding in Hval and have transformed the juvenile restitution statute into a quasi-civil recovery device. We address youth's two primary arguments concerning the amendments in turn.
First, youth asserts that ORS 419C.450 is no longer discretionary with the court both in its imposition and its amount. Before the 2003 amendments, the court's authorization to award restitution in a juvenile proceeding was discretionary. In part, ORS 419C.450(2) (2001) provided:
"Restitution for injury inflicted upon a person by the youth offender, for property taken, damaged or destroyed by the youth offender * * * may be required as a condition of probation."
(Emphasis added.) In 2003, the legislature made it mandatory for the court to order the youth offender to pay the victim restitution for the full amount of the victim's loss or injury. See ORS 419C.450(1)(a)(A)("[T]he court shall * * * [i]nclude in the judgment a requirement that the youth offender pay the victim restitution in a specific amount that *568 equals the full amount of the victim's injury, loss or damage as determined by the Court." (Emphasis added.)). Youth contends that the victim's absolute right to receive compensation in the full amount, without the court's exercise of discretion and consideration of the circumstances of the youth, now makes the restitution award a civil, not penal, recovery device. We disagree.
The restitution available to victims under the juvenile restitution statute in one major respect does resemble a civil remedy: the amount awarded for a victim's loss or damage could be recovered as economic damages in a civil action against the youth. Despite that similarity, though, significant differences remain.
Importantly, as in a criminal caseand unlike for a civil judgmentthe purpose of ordering restitution at a juvenile delinquency proceeding "is not to provide full compensation of all damages to victims of crime." Hart, 299 Or. at 138, 699 P.2d 1113. To the contrary, an award of restitution does not fully compensate the victim because it is restricted to the youth's payment of the victim's economic damages. See ORS 419A.004(23) (the definition of term "[r]estitution" has the same meaning given in ORS 137.103); ORS 137.103(3) (restitution is defined as "payment of economic damages to a victim"). The economic damages awardable as restitution are further limited to "objectively verifiable monetary losses" and exclude any future impairment of earning capacity. See ORS 137.103(2)(a) ("`Economic damages' * * * [h]as the meaning given that term in ORS 31.710, except that `economic damages' does not include future impairment of earning capacity."); ORS 31.710(2)(a) ("`Economic damages' means objectively verifiable monetary losses * * *."). That limit of the award to objectively verifiable monetary losses prevents the court from performing what is typically a jury function, assigning value to subjective noneconomic losses, e.g., pain and emotional suffering. See Dillon, 292 Or. at 175, 637 P.2d 602(a typical jury function is assigning value to losses like "pain and suffering, loss of consortium, and the like"). Accordingly, the victim is unable to recover noneconomic or punitive damages from the youth offender in a juvenile delinquency proceeding.
To recover his or her damages in full, the victim can bring a separate civil action against the youth offender to recover noneconomic or punitive damages, although "the court shall credit any restitution paid by the youth offender to a victim against any judgment in favor of the victim in such civil action." ORS 419C.450(2). The statutory reservation of the victim's right to bring a civil action also supports the conclusion that the goal of restitution is something other than fully compensating the victim.
Although restitution to the victim incorporates an aspect of civil compensation, the nature of the disposition required by the juvenile restitution statute continues to be consistent with the "theory of restitution" as penological in nature. Hart, 299 Or. at 138, 699 P.2d 1113 (citing Dillon, 292 Or. at 179, 637 P.2d 602). In the statute setting forth the purposes of the juvenile justice system, the legislature has declared that the system is founded onand therefore an award of restitution is relevant tothe youth offender's "personal responsibility, accountability and reformation within the context of public safety." ORS 419C.001. In addition, as in the criminal context, restitution in a juvenile delinquency proceeding is an aspect of a youth's disposition to serve rehabilitative and deterrent purposes. See Dillon, 292 Or. at 179, 637 P.2d 602. The Hval court concluded that the pre-2003 criminal restitution statute was an aspect of a defendant's sentence because the statute "expressly authorize[d] an award only following a conviction, and the statute specifies that it is to be imposed `in addition to any other sentence' that the trial court order[ed]." Hval, 174 Or.App. at 179, 25 P.3d 958. Similarly, ORS 419C.450 states that restitution is imposed "in addition to any other sanction [the court] may impose," ORS 419C.450(1)(a), and is "required as a condition of probation," ORS 419C.450(2). Furthermore, a victim cannot enforce the judgment for restitution because it is "in favor of the state," not the victim, and "may be enforced only by the state," unlike a civil judgment for damages suffered by the victim. ORS 419C.450(4). The juvenile court thus *569 imposes restitution as a sanction, an aspect of the youth's disposition, not as a form of civil recovery for the victim.
The rehabilitative and deterrent purposes of the restitution award are supported by the statute's legislative history. Senate Bill (SB) 617 (2003), which was the genesis for the 2003 amendments to ORS 419C.450, was referred to the House Committee on the Judiciary. In introducing the bill at the public hearing, Attorney General Hardy Myers stated that "[t]his bill in effect seeks to fulfill the constitutional commitment that Oregon has made to crime victims," under Article I, section 42.[1] Tape Recording, House Committee on Judiciary, SB 617, May 20, 2003, Tape 199, Side A (statement of Attorney General Hardy Myers). But the Attorney General further explained that offenders "should be under strict legal obligation to make a full restitution to victims and the [Restitution Reform] Task Force believes that such payment is also an important mechanism for offender rehabilitation and reintegration as a productive and law abiding member of our society." Tape Recording, House Committee on Judiciary, SB 617, May 20, 2003, Tape 199, Side A (statement of Attorney General Hardy Myers). Although the bill sought to ensure that crime victims received prompt restitution, the focus of the statutory amendment was also on the improvement of offender accountability and the rehabilitative effect the restitution award would have on the youth offender. See Tape Recording, House Committee on Judiciary, SB 617, May 20, 2003, Tape 199, Side A (statement of Attorney General Hardy Myers) (according to the Oregon Crime Victims' Needs Assessment, "offender accountability is the area within the criminal justice system most needing improvement"). Accordingly, youth's argument that a victim's absolute right to receive compensation makes the restitution award a civil recovery device is not persuasive, because the restitution available to victims does not fully compensate the victim and the judgment for restitution also serves rehabilitative and deterrent purposes.
Second, youth argues that another basis of the Hval court's holding, the opportunity to object to the restitution award based on an inability to pay the amount imposed, no longer applies in juvenile proceedings since the 2003 amendments. According to youth, because the amendments to the juvenile restitution statute removed the court's consideration of the financial resources of the youth offender in its determination of whether to order restitution, the restitution award has become more like a civil recovery device that requires a jury trial.
Although we noted in Hval that "a defendant's position under ORS 811.706 is not significantly different from that of a defendant faced with a possible restitution award pursuant to ORS 137.106," which allowed a defendant to object to the imposition of restitution based on his or her inability to pay, we also observed that "defendant cites no authority for the proposition that a * * * restitution award * * * becomes civil in nature if a defendant lacks an ability to pay." 174 Or.App. at 180, 25 P.3d 958. Youth, like the defendant in Hval, cites no authority for the proposition that a judgment of restitution becomes civil in nature if the court does not consider the offender's financial circumstances or inability to pay the total amount of restitution initially ordered. Accordingly, we do not find youth's reliance on Hval in this respect to be persuasive.
Furthermore, and as youth acknowledges, although the court no longer has discretion to consider a youth offender's financial circumstances in determining the amount of restitution because the judgment must contain the full amount of the victim's economic damages, ORS 419C.450(1)(a)(A), the court may consider the youth offender's ability to pay in other respects. If "the court finds that the youth offender is unable to pay, the court may establish or allow * * * a payment schedule." ORS 419C.450(3)(a). The youth also may file a motion for a satisfaction of judgment after paying 50 percent of the award and after certain requirements have *570 been satisfied, ORS 419C.450(5), and, if the victim does not object, the court "shall hold a hearing" and may enter an order granting full or partial satisfaction of the restitution judgment if the "failure to grant the motion would result in an injustice." ORS 419C.450(7). To determine such potential injustice, the court must take into account, among other things, the youth offender's "financial resources * * * and the burden that continued payment of restitution will impose," ORS 419C.450(7)(a), and "[t]he rehabilitative effect * * * of the continued payment of restitution," ORS 419C.450(7)(c). Thus, unlike a civil judgment, the judgment against a youth offender may be discharged by the court based in part on the youth's inability to pay all of the restitution originally ordered. Although youth correctly observes that the opportunities for a payment schedule and a satisfaction of judgment come only after the full amount of the victim's noneconomic damages are determined, sometimes in such a large amount that almost no youth could be expected to have the resources to pay the ordered restitution in full, that observation leads back to youth's unsupported assumption, which we have rejected, that a large restitution award "becomes civil in nature if a defendant lacks an ability to pay." Hval, 174 Or.App. at 180, 25 P.3d 958.
Although the juvenile restitution statute, ORS 419C.450, like the criminal restitution statute, reflects a "blend of both civil and criminal law concepts," Hart, 299 Or. at 138, 699 P.2d 1113, restitution within the juvenile justice system continues to serve, at least in some cases, a rehabilitative purpose, as well as a deterrent purpose, two "traditional goals of sentencing," id., by holding the youth offender accountable for his or her actions. Because we conclude that the amendments to the statute did not affect the predominately penal characteristics of the restitution awardand instead arguably reemphasized the role of restitution in "correcting * * * behavior" and impressing upon the offender "the seriousness and cost of his offense," as recognized in Hart, id.we conclude that juvenile court's order of restitution in a juvenile proceeding is penal, not civil, in nature. Accordingly, we affirm the trial court's denial of youth's motion for a civil jury trial on the issue of the imposition and amount of the restitution award.
Affirmed.
NOTES
[1] Article I, section 42 granted victims in juvenile delinquency proceedings, in part, "[t]he right to receive prompt restitution from the convicted criminal [or an alleged youth offender] who caused the victim's loss or injury." Or. Const., Art. I, § 42(d).