84 P.3d 190 (2004)
192 Or. App. 56
In the Matter of Kenneth James Fitch, a Minor Child.
STATE ex rel. JUVENILE DEPARTMENT OF WASHINGTON COUNTY, Respondent,
v.
Kenneth James FITCH, Appellant.
J00-0070; A111657.
Court of Appeals of Oregon, En Banc.
Argued and Submitted February 19, 2003.
Resubmitted October 2, 2003.
Decided February 4, 2004.
*191 Daniel A. Cross argued the cause for appellant. With him on the brief was Cross & Lurtz.
Douglas M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Before DEITS, Chief Judge, and EDMONDS, LANDAU, HASELTON, ARMSTRONG, LINDER, WOLLHEIM, BREWER, SCHUMAN and ORTEGA, Judges.
Resubmitted En Banc October 2, 2003.
LINDER, J.
Youth was taken into custody for hindering prosecution after he interfered with police efforts to apprehend a 15-year-old friend who was wanted for escape in the second degree. Youth was then searched and found to be in possession of drugs. Youth argues that, because the friend that he aided was a juvenile, not an adult, he could not be taken into custody for or found within the juvenile court's jurisdiction on the allegation of hindering prosecution, which requires proof that the person whose prosecution was hindered committed a "crime" punishable as a felony. See ORS 162.325. Youth reasons that juveniles *192 commit delinquent acts, not crimes, because they are not subject to criminal prosecution or punishment. Contrary to youth's position, however, the juvenile code decriminalizes responsibility for the commission of a crime; it does not decriminalize the juvenile's conduct. The focus of the hindering prosecution statute is on assisting a person who has engaged in unlawful conduct, not one who has been held criminally responsible for that conduct. Thus, a juvenile who engages in conduct that is classified as a felony offense commits a "crime" for purposes of the hindering prosecution statute regardless of whether the juvenile offender is subject to criminal prosecution, conviction, or punishment. We therefore affirm.
For purposes of resolving the issue presented, the facts can be briefly summarized. A 15-year-old friend of youth's, Fowler, escaped from police custody. The next day, Sergeant Arnold investigated a report of a "suspicious vehicle" that had been associated with Fowler. The four occupants of the vehicle were getting out or had gotten out of it as Arnold parked his patrol car and approached. Arnold first conversed with youth, who was standing about 25 feet from the other occupants and whom Arnold recognized as having been with Fowler when Fowler escaped from custody the night before. Arnold asked youth if he had seen Fowler, talked to him on the phone, or otherwise heard from him; youth said that he had not. Arnold warned youth of the prohibition against hindering prosecution. Youth told Arnold that the officer who had tried to arrest Fowler the night before had already warned him about that, and youth repeated that he had not seen or heard from Fowler. As it happened, however, and as police soon learned, Fowler was one of the other occupants of the vehicle and was standing about 25 feet away when youth made those representations to Arnold. When the police discovered that fact, they took youth into custody for hindering prosecution, searched him, and discovered in his pocket a pipe containing methamphetamine.
Before the hearing on the state's delinquency petition, youth moved to suppress evidence of his possession of methamphetamine. Youth argued that his custody and the ensuing search were unlawful on the theory that, as a matter of law, a person cannot hinder the prosecution of a juvenile. As already described, youth reasoned that the hindering prosecution statute requires interference with the apprehension or prosecution of someone who has committed a felony crime; that juveniles, as a matter of law, do not commit crimes; and that, therefore, as a matter of law, a person does not violate the hindering prosecution statute by hindering the apprehension of a juvenile. The juvenile court rejected youth's position and denied the motion to suppress. At the hearing, youth reiterated the same legal theory in arguing to the juvenile court that, as a matter of law, it could not find him to be within the court's jurisdiction on the hindering prosecution allegation. The juvenile court again rejected youth's argument.
On appeal, youth challenges the ruling on his motion to suppress and the juvenile court's finding of jurisdiction on the hindering prosecution allegation, renewing the argument that he made to the juvenile court. In particular, youth argues that juveniles do not commit crimes but instead, as a matter of law, they commit "acts which, if done by an adult, would constitute a crime." Youth also argues that juvenile court adjudications are not criminal convictions; that juvenile delinquency proceedings are not criminal proceedings of any kind; and that juvenile dispositions are not sentences. Necessarily, then, as youth's argument goes, because Fowler was a juvenile, he was legally incapable of committing a felony crime and therefore youth did not hinder the apprehension of one who had "committed a crime" punishable as a felony within the meaning of the hindering prosecution statute (ORS 162.325).
Whether juveniles commit crimes ultimately involves questions of statutory interpretation, which we review as questions of law. See State v. Lawler, 144 Or.App. 456, 461, 927 P.2d 99 (1996), rev. den., 326 Or. 390, 952 P.2d 63 (1998). But before turning to the specific statutes that bear on the issue, we begin by describing Oregon's juvenile and criminal justice systems, as they existed historically and as they exist today, because the *193 interplay between them is significant to our analysis.
Before the last years of the nineteenth century, "delinquency" was unknown to the common law and no separate system of juvenile justice existed, either in Oregon or in most other jurisdictions. See State ex rel. Juv. Dept. v. Reynolds, 317 Or. 560, 566, 857 P.2d 842 (1993); Margaret May, Innocence and Experience: The Evolution of the Concept of Juvenile Delinquency in the Mid-Nineteenth Century, 3 Crime and Justice in American History: Delinquency and Disorderly Behavior 46, 47-48 (Eric H. Monkkonen ed., 1991). Instead, the common law and the early statutory schemes of most states classified people into two categories: (1) those capable of forming criminal intent, who were subject to the full force of the criminal system, and (2) those incapable of forming such intent, who were outside the reach of the law altogether. Id. at 47-48. With respect to age, the common law drew a bright line at the "age of reason." Juveniles under the age of seven were held legally incapable of forming criminal intent, while those over the age of fourteen were held fully responsible for their actions.[1]Id. Juveniles between the ages of seven and fourteen were presumed incapable of forming criminal intent, but the state was permitted to rebut that presumption. Id.; Reynolds, 317 Or. at 566, 857 P.2d 842.
In the late 1800s, the legislature enacted Oregon's first statutes giving trial courts limited discretion to treat juveniles differently from adults. Reynolds, 317 Or. at 567, 857 P.2d 842. For the most part, those laws altered the trial court's dispositional authority for juveniles who had been convicted of or charged with crimes. Id. But it took until 1907 for Oregon to create its first juvenile court system that permitted juvenile offenders to be handled through a justice system separate from the criminal system used for adults. Id. at 567-68, 857 P.2d 842. Importantly, however, juvenile court jurisdiction was not made exclusive. As a result, juveniles remained fully subject to criminal prosecution as adults, depending on whether the local district attorney opted to charge them as adults or to adjudicate their cases through the juvenile court. Id. at 568-69, 857 P.2d 842. That dual-jurisdiction system remained in place until 1959, when the juvenile justice system much as we know it today came into existence. At that time, the juvenile court was given "exclusive" jurisdiction over juveniles under age 18 who violated the law, subject only to provisions authorizing the juvenile court, in limited and specified circumstances, to transfer (i.e., "waive") a juvenile to the circuit court for prosecution as an adult. Id. at 569, 857 P.2d 842. Thus, until less than 50 years ago, juveniles remained within the jurisdiction of the criminal justice system and could be charged, prosecuted, and punished as adults at the discretion of the local district attorney.[2]
Although juvenile court jurisdiction under our current statutory scheme is "exclusive," that exclusive jurisdiction is riddled with exceptions. In general, the exceptions fall into three categories. The first consists of juveniles over whom juvenile court jurisdiction has been eliminated altogetherthat is, juveniles ages 15, 16, or 17 who have committed statutorily specified serious felony crimes. Such juveniles are automatically criminally tried as adults in circuit court. See ORS 137.707; see generally State v. Pike, 177 Or.App. 151, 154, 33 P.3d 374 (2001), rev. den., 333 Or. 568, 42 P.3d 1246 (2002) (describing operation of the statute). The second category consists of juveniles for whom waiver from juvenile court to circuit court for prosecution as an adult is discretionary. The juvenile court is vested with such discretion in a wide variety of circumstances. See, e.g., *194 ORS 419C.349 (juveniles under the age of 15 who commit specified serious offenses); ORS 419C.352 (same); ORS 419C.364 (all future cases involving a juvenile age 16 or older whose current case is waived to circuit court); ORS 419C.370 (blanket local orders of waiver for all juveniles who commit certain lesser offenses, such as violations of motor vehicle, boating, and game laws, as well as violations of local ordinances and certain misdemeanor-level offenses).
The third category of juvenile offenders who are subject to prosecution in circuit court as adults consists of those who commit their crimes as juveniles but who are not apprehended until after they become 18 years of age. As a rule, if a person is over age 18 when he or she is charged with a criminal offense, that person will be tried as an adult. See State v. Scurlock, 286 Or. 277, 282-83, 593 P.2d 1159 (1979). That is true even if the person committed the charged offense before he or she turned 18. State v. Watchman, 20 Or.App. 709, 711, 533 P.2d 361, rev. den. (1975).[3] Consequently, any juvenile offender is potentially subject to automatic prosecution as an adult, regardless of his or her age when the offense was committed and regardless of the nature of the offense. Whether the juvenile court or the circuit court has jurisdiction therefore initially depends, for every juvenile offender, on whether the offender is successfully apprehended and brought within the juvenile court's jurisdiction before the offender turns 18.
To this day, consistently with that intersection of the criminal and juvenile justice systems, the criminal code makes few distinctions between adults and juveniles in its application. In general, the criminal code prohibits "persons" from engaging in specified acts. See generally ORS chapters 161-67. The term "person" is defined broadly to include any "human being" and is not limited to adult human beings. ORS 161.015(5). Insofar as the criminal code is concerned, then, crimes like escape in the second degree (i.e., the felony that Fowler committed) are committed whenever a human being, irrespective of age, engages in the prohibited act with the prescribed mental state.[4] The primary exception is for persons who, when they committed their crime, were under the age of 12, and it applies only if the person successfully asserts immaturity as a defense.[5] But even as to persons under the age of 12 at the time of the offense, the offending conduct is treated by the criminal code as criminal in nature and is subject to adjudication through the criminal justice system.
Necessarily, then, if a juvenile's conduct is to be deemed noncriminal, it must be as a result of the juvenile code provisions, not those of the criminal code. Youth's argument implicitly recognizes as much. That is, youth relies only on various aspects of the treatment of juvenile offenders under the juvenile code to argue that juveniles do not commit crimes but, instead, commit acts that if committed by an adult would be crimes. The problem with youth's argument, however, is that it fails to distinguish between conduct and the legal responsibility attached to that conduct. The juvenile code decriminalizes only the latter, not the former, a fact that is significant (as we later discuss) to the crime of hindering prosecution.
*195 The primary objective of the juvenile justice system is to avoid the stigma associated with a criminal conviction and to emphasize instead rehabilitative efforts for a juvenile offender. See generally Reynolds, 317 Or. at 570-74, 857 P.2d 842. Consistently with that objective, juvenile adjudications are not the legal equivalent of criminal prosecutions. Id. at 563, 857 P.2d 842 (juvenile delinquency adjudication is not a criminal prosecution for constitutional purposes); State v. Thompson, 166 Or.App. 370, 381-82, 998 P.2d 762, rev. den., 331 Or. 192, 18 P.3d 1099 (2000) (juvenile delinquency proceeding is not a criminal proceeding within meaning of aggravated murder statute). Juvenile adjudications do not result in convictions. ORS 419C.400. Nor, moreover, are juvenile dispositions the legal equivalent of criminal sentences. State ex rel. Juv. Dept. v. Johnson, 168 Or.App. 81, 87, 7 P.3d 529 (2000); State v. Trice, 146 Or.App. 15, 20-21, 933 P.2d 345, rev. den., 325 Or. 280, 936 P.2d 987 (1997). In short, juveniles who come within the juvenile court's jurisdiction, if not waived to circuit court, are neither prosecuted nor convicted criminally as adults. In that sense, they are not held criminally responsible for their conduct.
Nothing in the juvenile code, however, decriminalizes the conduct itself. In suggesting that it does, youth relies only on ORS 419C.005, the statute establishing the juvenile court's jurisdiction. In particular, youth asserts that, pursuant to that statute, juveniles commit only "acts which, if done by an adult, would constitute a crime," thus suggesting that the statute decriminalizes not only the responsibility for criminal acts but the acts themselves.
The text of the statute, however, refutes rather than supports youth's position. ORS 419C.005(1) provides:
"Except as otherwise provided in ORS 137.707, the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city."
(Emphasis added.) As the emphasized language makes plain, the statute recognizes jurisdiction over two kinds of acts committed by persons under 18:(1) acts that are violations of law; and (2) acts that would be violations if committed by an adult. The juvenile code has long distinguished between the two to ensure, through the latter provision, that a juvenile court's jurisdiction attaches over a juvenile even if the juvenile commits an offense that requires the offender to be an adult or of a particular age.[6]See ORS 163.165(1)(h) (assault in the third degree is committed when someone 18 years or older causes physical injury to someone 10 years or younger); ORS 163.435 (contributing to the sexual delinquency of a minor is committed by a person 18 years or older); ORS 161.290 (no criminal liability for offender who was under 12 at the time of the offense). In effect, ORS 419C.005 stands as an express legislative acknowledgment that a juvenile offender's conduct can be a violation of law, not just an act that would be a violation of law if committed by an adult. The "would be" provision exists for violations that require an offender to be of a particular age, a circumstance not implicated in this case.
*196 Thus, nothing in the juvenile code generally, or in ORS 419C.005 in particular, declares a juvenile's conduct, as opposed to the legal responsibility that attaches for the conduct, to be noncriminal. In fact, the declared policy statement in ORS 419C.001 as to the purposes of the juvenile system belies any such suggestion. Those purposes include providing "a continuum of services that emphasize prevention of further criminal activity by the use of early and certain sanctions, reformation and rehabilitation programs * * *." ORS 419C.001(1) (emphasis added). They also include providing programs, policies and services provided for juvenile offenders that are effective in "preventing a youth's return to criminal behavior." ORS 419C.001(2)(a) (emphasis added).
The remaining issue is whether the crime of hindering prosecution turns on the conduct of the person aided or on that person's legal responsibility for that conduct. More specifically, does a person "commit a crime" punishable as a felony within the meaning of the hindering prosecution statute only if the person is subject to criminal prosecution and felony punishment for that crime? Or does a person "commit a crime" punishable as a felony if the person engages in conduct classified as a felony offense, regardless of whether the person ultimately is prosecuted and punished criminally?
The text and context of the hindering prosecution statute provide the answer. Hindering prosecution consists of intentionally interfering, in one of several specified ways, with the apprehension, prosecution, conviction, or punishment of a person who "has committed a crime punishable as a felony * * *." ORS 162.325(1) (emphasis added).[7] As a matter of plain text, the legislature drafted the hindering prosecution statute in terms that refer only to the conduct of the person aided, not to that person's criminal responsibility for that conduct. Had the legislature intended the latter, it could have said so by, for example, referring to a person who could be charged with or convicted of a felony crime. See, e.g., ORS 131.885 (authorizing counties to offer rewards for apprehension of persons). The legislature chose instead to use language describing the aided person's behavior.[8]
Context, both in the form of related statutes and the statutory and common-law precursors to the current hindering prosecution statute, confirms that the legislature's choice was deliberate. See Denton and Denton, 326 Or. 236, 241, 951 P.2d 693 (1998) (although text is the best guide to the legislature's intent, related statutes and the common law and statutory framework within which a law was enacted are also relevant at the first level of analysis). A related statute, ORS 162.345, declares that "[i]t is no defense to a prosecution for hindering prosecution * * * that the principal offender is not apprehended, prosecuted, convicted or punished." Thus, the principal offender commits a "crime punishable as a felony" within the meaning of the hindering prosecution statute by engaging in conduct for which a felony sentence is authorized by law. It matters not whether that person is prosecuted or punished for engaging in the conduct.
*197 That understanding is likewise reflected in the common law and statutory context against which the current hindering prosecution statute was enacted. As we explained in State v. Allred, 165 Or.App. 226, 231-32, 995 P.2d 1210 (2000):
"Hindering prosecution is a descendant of the common-law crime of accessory after the fact, which was an offense based on accessorial liability. At common law, accessorial liability `rested on the notion that one who helps an offender avoid justice becomes in some sense an accomplice in the original crime.' Model Penal Code and Commentaries § 242.3, 224 (Official Draft and Revised Comments 1985). One guilty of accessory after the fact was, in effect, derivatively liable for the underlying crime. Consistent with the notion of derivative liability, the accessory had to have knowledge that the principal committed the crime, the principal had to be tried first or jointly with the accessory, the principal's conviction was a prerequisite to punishment of the accessory, and the accessory was subject to the same sentence as the principal. Id.

"The Model Penal Code (MPC) broke `decisively' from the common-law view of the offense by rejecting its tradition of accessorial liability and adopting instead `the alternative theory of prosecution for obstruction of justice.' Id. at 224-25. The MPC therefore reformulated the crime as that of hindering apprehension or prosecution. It aimed the prohibition at the `purposeful efforts to aid another to evade justice' and did so `without regard to whether the person assisted in fact committed a crime and with penalties not invariably tied to those prescribed for the underlying offense.' Id. at 225."
By the time the legislature revised the criminal code in 1971, Oregon already had abandoned the common-law accessory-after-the-fact predicate that the principal be convicted of and punished for a felony. Early on, Oregon's statutes provided for accessorial liability based on the nature of the principal's crime, rather than the principal's criminal responsibility for the crime. See generally State v. Hinkle, 33 Or. 93, 96, 54 P. 155 (1898); State v. Stevenson, 2 Or.App. 38, 39-40, 465 P.2d 720 (1970). Oregon law retained, however, the requirement that an accessory after the fact have "guilty knowledge" that the person aided has committed a crime. See The Codes and General Laws of Oregon, ch. XIII, title II, § 2012 (Hill 2d ed. 1892) (an accessory is a person who, after the commission of a felony, conceals or aids the offender with knowledge of the offender's crime). In 1971, the legislature abandoned that vestige of the common-law crime and substantially adopted the approach of the Model Penal Code (MPC):
"The legislature repealed the former accessory statute (former ORS 161.230) and replaced it with hindering prosecution, codified as ORS 162.325. Although borrowing in part from the MPC, Oregon did not abandon accessorial liability altogether. Rather, it retained the requirement that the person aided be one `who has committed a crime punishable as a felony.' See ORS 162.325(1). Significantly, however, Oregon shifted the emphasis to the public's interest in preventing the obstruction of justice. The legislature changed the mental state required for hindering prosecution by deleting the requirement that a defendant know that the person he or she aided in fact had committed a felony. Instead, the mental state required is the intent to hinder apprehension or prosecution, thus aiding the offender in `escaping justice.' See generally Commentary to Oregon Criminal Code of 1971, § 162.325, 106 (1975)."
Allred, 165 Or.App. at 232-33, 995 P.2d 1210 (emphasis in original).
Thus, as codified, hindering prosecution requires that the person aided have committed a felony crime. But, in contrast to its common-law precursor crime of accessory after the fact, hindering prosecution does not require that the person aided be prosecuted or convicted of the felony, or otherwise held criminally responsible for violating a law classifying the conduct as a felony. Text and context establish that the focus of the hindering prosecution statute is on the aided person's criminal conduct, not the imposition of criminal responsibility for that conduct.
*198 In this case, Fowler committed a crime punishable as a Class C felony because he engaged in conducti.e., escape in the second degreefor which state law authorizes a felony sentence of imprisonment. See ORS 162.155. To be sure, because of his status as a juvenile, Fowler could not have been prosecuted for or convicted of a felony crime if he had been apprehended and brought into juvenile court jurisdiction before becoming 18. But the fact that Fowler's treatment, in terms of adjudication and disposition, likely would differ from that of an adult does not alter the nature of his conduct. Fowler's conduct was prohibited by law and was classified and punishable as a felony. As a result, Fowler "committed a crime" punishable as a felony within the meaning of the hindering prosecution statute, and youth, by interfering with Fowler's prosecution, violated the hindering prosecution statute.
In his dissent, Judge Wollheim, in effect, analyzes the issue in the same way that youth does and rejects the distinction that we believe the statute makes between criminal conduct and criminal responsibility for that conduct.[9] In doing so, he relies principally on Reynolds and Thompson, arguing that our analysis here is irreconcilable with those cases. Nothing in our analysis in this case calls the holdings of either Reynolds or Thompson into doubt, however. Rather, those cases held only that an adjudication in juvenile court is not a criminal prosecution or criminal action for purposes of the Oregon Constitution or the criminal code. That remains true. More importantly, for purposes of this case, those holdings are beside the point. The question here is whether application of the hindering prosecution statute depends on the conduct of a person aided or on that person's criminal responsibility. If the statute depended on the aided person's criminal responsibility, we would agree that Reynolds and Thompson compel a conclusion that hindering prosecution cannot be committed by a youth offender who is adjudicated in juvenile court. As we have described at length, however, the focus of the hindering prosecution statute is on the nature of the conduct committed. Significantly, Judge Wollheim's analysis does not address that aspect of our analysis.[10]
Judge Armstrong, in his dissent, approaches the issue from a different perspective. He agrees that, as a general proposition, juveniles "commit crimes," reasoning that "whether someone has engaged in conduct that is prohibited by a criminal statute does not depend on whether the particular person is someone who can be prosecuted for that conduct. Rather, it depends on whether anyone could be prosecuted for the conduct." 192 Or.App. at 74, 84 P.3d at 201 (Armstrong, J., dissenting) (emphasis in original). He asserts, however, that the crime of hindering prosecution is uniquely directed to interference with the criminal justice system and cannot be committed by "engaging in conduct that interferes with the state's ability to deal with a juvenile who has engaged in conduct for which the juvenile can only be adjudicated as delinquent" in the juvenile justice system. Id. at 77, 84 P.3d at 202. None of the arguments that Judge Armstrong asserts in support of his analysis, however, withstand scrutiny.
*199 Judge Armstrong first asserts that the reference in ORS 162.325(1) to "apprehension, prosecution, conviction or punishment" describes a four-part continuum that refers exclusively to "steps in the criminal justice process." Id. at 76, 84 P.3d at 201. In doing so, he places more weight on those words than their plain meaning or context will bear. What Judge Armstrong characterizes as language used to "describe the conduct constituting the crime of hindering prosecution," id. at 75, 84 P.3d at 201 in fact appears only in the statutory description of the intent element of the crime. See ORS 162.325(1) (set out in full at 192 Or.App. at 66, 84 P.3d at 196). In that regard, Judge Armstrong concedes that the disjunctive phrasing of the language reflects a deliberate decision on the legislature's part to ensure that an intent to hinder in any one of those particularse.g., in apprehending someone who has committed a crime, as opposed to prosecuting, convicting, and punishing that person as wellwill support a conviction for hindering prosecution. 192 Or.App. at 76, 84 P.3d at 202 (Armstrong, J., dissenting). Curiously, however, Judge Armstrong then discounts the subsections of the statute that expressly describe the prohibited conduct, none of which uses the language on which Judge Armstrong relies. In every instance, the legislature described conduct that applies as readily to a juvenile adjudication as to a criminal prosecutione.g., harboring or concealing a person who has committed a crime; warning the person of impending discovery or apprehension; providing that person with money, transportation, weapons, or disguise; concealing or destroying evidence that might lead to the person's discovery or apprehension. See ORS 162.325(1)(a)(f). Neither the literal text nor the context of the language on which Judge Armstrong relies supports his analysis.[11]
Next, Judge Armstrong relies on legislative history. He observes, correctly, that the hindering prosecution statute was drawn from the MPC and from jurisdictions that had adopted the MPC's approach. He then asserts that the pertinent commentary "makes clear" that the crime of hindering prosecution was designed to reach only interferences with criminal prosecutions, not juvenile adjudications. But the portion of the commentary that Judge Armstrong cites to support his assertions says nothing of the sort. See 192 Or.App. at 79-80, 84 P.3d at 203 (Armstrong, J., dissenting). To the contrary, it confirms the opposite conclusion that is, that the crime of hindering prosecution was intended to apply broadly to efforts to aid any "fugitive from justice" or otherwise obstruct government justice procedures.[12]
Finally, Judge Armstrong's analysis assumes a proposition that is legally incorrect. That is, it assumes the existence of juveniles who, from the moment they commit a crime forward, are subject only to adjudication in the juvenile justice system. 192 Or.App. at 73, 84 P.3d at 200 (Armstrong, J., dissenting) (characterizing this case as presenting only the "narrow" question of whether a person can be guilty of hindering prosecution by interfering with the adjudication of "juveniles [who] cannot be prosecuted criminally" (emphasis in original)). As already described, however, all juveniles are potentially subject to criminal prosecution as adults because any juvenile offender, regardless of age or offense, can be criminally prosecuted as an adult if the offender is not discovered and *200 apprehended until after age 18. Ironically, then, Judge Armstrong would hold that the hindering prosecution statute does not reach the very activity that stands the greatest chance of resulting in a juvenile offender's prosecution as an adult by forestalling the juvenile's discovery or apprehensioni.e., harboring or concealing the juvenile; providing the juvenile with money, transportation, weapons, or disguise; warning the juvenile of impending discovery or apprehension; or concealing or destroying evidence that might lead to the juvenile's discovery or apprehension. See ORS 162.325(1). Such a result makes no sense.
In summary, we conclude that the juvenile code decriminalizes responsibility for the commission of a crime; it does not decriminalize the juvenile's conduct. We further conclude that the focus of the hindering prosecution statute is on assisting a person who has engaged in conduct that is classified as a felony crime, not one who has been held criminally responsible for that conduct. A juvenile who engages in felonious conduct thus commits a "crime" for purposes of the hindering prosecution statute regardless of whether he or she is ultimately prosecuted, convicted, or punished criminally for the conduct. Here, Fowler engaged in such conduct, and youth lied to police in an effort to help Fowler avoid discovery and apprehension. Youth therefore violated the hindering prosecution statute and, as a result, the trial court correctly denied youth's motion to suppress and properly adjudicated youth to be within the court's jurisdiction on that ground.
Affirmed.
ARMSTRONG, J., dissenting.
The determinative question in this case is whether a person can be guilty of hindering the prosecution of a juvenile for conduct for which the juvenile cannot be prosecuted criminally. The answer to that question is no.
It is important to make clear at the outset the narrow question that the case presents. It concerns the treatment of people who interfere with the state's ability to adjudicate and treat juveniles in the juvenile court system for conduct for which the juveniles, at the time of the interference, cannot be prosecuted criminally. If a person interferes with the state's ability to deal with a juvenile who, at the time of the interference, can be prosecuted criminally for his conduct, then the person can be prosecuted for hindering prosecution without regard to whether the juvenile is prosecuted criminally. For example, there is no age limit on the waiver of juveniles to circuit court for engaging in conduct that would constitute the crime of murder if committed by an adult. See ORS 419C.352. Consequently, an adult or juvenile who interferes with the state's ability to prosecute a juvenile for murder can be prosecuted for hindering prosecution without regard to whether the juvenile is waived to circuit court for criminal prosecution.
However, neither an adult nor a juvenile is subject to criminal liability for hindering prosecution for interfering with the state's ability to adjudicate and treat juveniles in juvenile court for conduct for which the juveniles cannot be prosecuted criminally. For example, a 14-year-old cannot be waived to circuit court for committing second-degree escape. See ORS 419C.349. Because a 14-year-old cannot be prosecuted criminally for that conduct, neither adults nor juveniles can be convicted for hindering the prosecution of a 14-year-old for second-degree escape.
The majority reaches a contrary conclusion about the liability of people who interfere with the ability of the state to adjudicate and treat juveniles in the juvenile court system for conduct for which they could not be prosecuted criminally. It focuses on the definitions of the words "crime" and "offense" to conclude that it does not matter, for example, whether a 14-year-old could be prosecuted criminally for second-degree escape in order for people to be liable for hindering the prosecution of the 14-year-old. The majority reasons that the definitions of "crime" and "offense" focus on conduct that can subject people to criminal liability. The definitions do not require that the conduct be conduct that will subject to criminal liability the person who engages in the conduct. Consequently, *201 whether someone has engaged in conduct that is prohibited by a criminal statute does not depend on whether the particular person is someone who can be prosecuted for that conduct. Rather, it depends on whether anyone could be prosecuted for the conduct. If the answer to the last question is "yes," then everyone who engages in the conduct commits an act that is prohibited by the statute, whether or not they can be prosecuted criminally for the conduct.
As I will explain, the majority's reasoning is generally sound, but it is flawed when applied to the crime of hindering prosecution. It is flawed as to the latter crime because it ignores the words used to describe the conduct constituting the crime of hindering prosecution that apply to this case. The critical words in the statute that the majority ignores are the words "apprehension, prosecution, conviction or punishment." ORS 162.325(1).[1] Those words describe the process by which people are prosecuted for crimes in the criminal justice system, not the process by which people are adjudicated as delinquent in the juvenile court system. Although the word "apprehension" can be understood to describe a step in the process by which people are adjudicated as delinquent in the juvenile court system, the words "prosecution," "conviction," and "punishment" cannot. Because the last three words describe steps in the continuum of events by which people are prosecuted for crimes, I believe that the only sensible interpretation of the first word in the four-word sequence, "apprehension," is that it, too, describes a step in that process.
In other words, both the criminal justice and juvenile court systems can be seen to involve a four-step process to deal with people who are subject to them. In the criminal justice system, people are apprehended, prosecuted, convicted, and punished. In the juvenile court system, people are apprehended, juvenile proceedings are initiated against them, and they are adjudicated and treated for their conduct.[2] In my view, the legislature's decision to use terms for three parts of the four-part continuum that refer exclusively to steps in the criminal justice process compels a conclusion that all of the terms describe steps in that process and *202 do not describe steps in the juvenile court process.
The majority rejects that conclusion. It notes that the four steps that are listed in the hindering prosecution statute are listed disjunctively and that apprehension of people is a step that occurs in both juvenile and criminal proceedings. It reasons, therefore, that the hindering prosecution statute covers conduct undertaken with the intent to hinder the apprehension of juveniles even if it does not cover conduct undertaken with the intent to hinder any later steps in the process of adjudicating juveniles for delinquent conduct. With respect, that cannot be correct.
We are required to interpret words in light of the context in which they appear and to make sense of them in light of that context. The hindering prosecution statute lists four steps that describe the complete continuum of steps by which the state prosecutes people for criminal conduct. Those steps had to be listed disjunctively in the statute in order for the statute to apply to people who act with the intent to interfere with any one of the steps in the prosecution process. If the steps had been listed conjunctively, then the statute could be interpreted to apply only to those who act with the intent to interfere with all of the steps, and there is no reason to imagine that the legislature would choose to write the statute that way.
The legislature used the four words that it did in order to describe a complete sequence or continuum of events. The statute must be interpreted in a way that recognizes that feature of it. It refers to conduct that is intended to hinder any one of four steps in a complete process. The only process to which the four steps can apply is the process to prosecute people in the criminal justice system for their criminal conduct. The applicable words of the hindering prosecution statute cannot sensibly be interpreted to apply to conduct that is undertaken to interfere with any other process, including the process by which juveniles are adjudicated as delinquent.
Because the applicable words of the hindering prosecution statute describe conduct that interferes with the state's ability to prosecute people in the criminal justice system, those words do not apply to conduct that interferes with the state's ability to deal with people in the juvenile court system. Consequently, neither an adult nor a juvenile commits the crime of hindering prosecution by engaging in conduct that interferes with the state's ability to deal with a juvenile who has engaged in conduct for which the juvenile can only be adjudicated as delinquent in the juvenile court system. Conversely, however, both adults and juveniles can be held liable in the respective systems for engaging in conduct that interferes with the state's ability to deal with a person who could be prosecuted in the criminal justice system.
I believe that the hindering prosecution statute is distinctive in defining the proscribed conduct in terms that apply only to the criminal justice system. I know of few other crimes that are limited in that way. Consequently, the hindering prosecution statute may be one of few statutes to which the general principle on which the majority relies to uphold the conviction in this case does not apply. Again, that principle is one that focuses on whether the conduct at issue is conduct for which someone could be prosecuted criminally. If it is, then the criminal statute that describes that conduct applies without regard to whether the person who engaged in the conduct is someone who could be prosecuted criminally.
For example, ORS 161.155 provides, in part, that
"A person is criminally liable for the conduct of another person constituting a crime if:
"* * * * *
"(2) With the intent to promote or facilitate the commission of the crime the person:
"(a) Solicits or commands such other person to commit the crime[.]"
As the majority correctly recognizes, "crime" is defined in such a way as to describe conduct for which someone can be held criminally liable. It is not defined in terms of conduct that applies only when the person who engages in the conduct is someone who can be held criminally liable for the conduct. Consequently, a person, whether an adult or *203 a juvenile, who solicits a juvenile to commit a crime has engaged in conduct proscribed by ORS 161.155(2)(a) even if the juvenile who is solicited to engage in the underlying crime is someone who cannot be prosecuted criminally for that conduct. The same principle applies to aiding and abetting liability (ORS 161.155(2)(b)), conspiracy to commit a crime (ORS 161.450), solicitation of a crime (ORS 161.435), compounding the commission of a crime (ORS 162.335), and so forth.
The analysis that I have described is consistent with every case cited by the majority and dissenting opinions in this case, including State v. Harvey, 303 Or. 351, 736 P.2d 191 (1987); State v. Thompson, 166 Or.App. 370, 998 P.2d 762 (2000); and State ex rel. Juv. Dept. v. Reynolds, 317 Or. 560, 857 P.2d 842 (1993). In contrast, I do not believe that the majority's decision can be reconciled with the reasoning by which we decided Thompson. I believe that our reasoning in Thompson is correct, and I would adhere to it.
My interpretation of the hindering prosecution statute is premised on the proposition that the statute is unambiguous. If the majority's interpretation were tenable, then my interpretation would at least be another tenable interpretation, which means that the statute would be ambiguous and we would need to review its legislative history to see if that history could help us resolve the ambiguity. As it turns out, the statute's legislative history supports my interpretation.
The statute was adopted in 1971 as part of the comprehensive revision of the state criminal code. See Or. Laws 1971, ch. 743, § 207. The official commentary to the provision indicates that it was derived from several sources, including Model Penal Code section 242.3. Oregon Criminal Law Revision Commission, Proposed Oregon Criminal Code Final Draft and Report 206 (July 1971). The commentary to that section of the Model Penal Code, in turn, makes clear that the hindering prosecution statute was intended to address conduct that interferes with a state's ability to prosecute people criminally for their criminal conduct. It does not suggest in any way that it was intended to reach the conduct of people who act to interfere with the state's ability to pursue people in any other forum, including a juvenile court forum, for their criminal conduct. See Model Penal Code § 242.3 comment 1 (Proposed Official Draft 1962). Consequently, even if the hindering prosecution statute were ambiguous, we would have to interpret the applicable language of the statute to mean what I have interpreted it to mean.
The majority disagrees. It contends that the commentary to the Model Penal Code supports its interpretation of the hindering prosecution statute. The majority is wrong.
As the majority recognizes, the Model Penal Code broke with the common law by creating a separate crime of hindering prosecution rather than treating people who interfere with the prosecution of others as people who are "accessories" to the others' crimes. The principle purpose of the shift was to recognize that the conduct that the statute seeks to reach is conduct that interferes with a governmental operation, the prosecution of people for criminal conduct:
"Section 242.3[, the hindering prosecution section,] rejects the theory of accessorial liability for those who aid the offender after the consummation of the crime and adopts the alternative theory of prosecution for obstruction of justice. A person who aids another to elude apprehension or trial is interfering with the processes of government. The willingness to do that and the harm threatened by such behavior are the appropriate focus for penal sanctions, not the fiction that one who harbors a murderer thereby becomes a party to a criminal homicide. It is obvious that many persons who have no other inclination to anti-social activity may be influenced by offer of gain or by friendship or kinship to help a fugitive from justice. Once this distinct criminalogic problem is recognized, the basis is laid for treating this kind of behavior for what it isobstruction of justice."
Id. at 225.
Critically, however, the obstruction of justice that is the focus of the section is obstruction of the criminal justice system, not the juvenile justice system. Both the commentary and the section make that clear. The commentary says that "[s]ection 242.3 applies *204 to purposeful efforts to hinder the apprehension, prosecution, conviction, or punishment of another person." As I explained at length above, those terms describe a continuum of steps by which people are brought to justice in the criminal justice system. They are not terms that describe the continuum of steps by which juveniles are brought to justice in the juvenile court system. The section makes the same point by providing that "[a] person commits an offense if, with purpose to hinder the apprehension, prosecution, conviction, or punishment of another for crime," the person engages in certain conduct that can have that effect.
The majority chides me for failing to distinguish between the intent element of the crime and the specific conduct that the statute proscribes. See 192 Or.App. at 71, 84 P.3d at 199. I do not understand the majority's point. The conduct that the statute identifies as unlawful conduct is unlawful only if it is undertaken with the requisite intent or purpose. Consequently, the intent that the statute identifies as an element of the crime is part of what defines the prohibited conduct. If a person engages in one of the prohibited acts in the statute without the requisite intent, then the person has not engaged in prohibited conduct.
The majority completely fails to understand that point. It says that the conduct that the statute describes is conduct that could interfere with the juvenile justice system as well as with the criminal justice system. Id. at 71, 84 P.3d at 199. That is true but beside the point. The specific acts that the statute identifies cannot be analyzed in isolation. They necessarily must be analyzed in conjunction with the intent element of the crime. The majority makes no effort to do that.
The majority makes one other point. It notes that the commentary does not directly state that the obstruction of justice to which the hindering prosecution statute is addressed is limited to obstruction of the criminal justice system. I disagree, because I believe that the discussion of the intent element of the crime necessarily establishes that the obstruction of justice that is the subject of the statute is obstruction of the criminal justice system.
As importantly, the commentary does not say that the statute is intended to reach conduct that interferes with anything other than the criminal justice system. I believe that its failure to do that is telling. If the statute were intended to reach conduct that interferes with governmental operations other than those of the criminal justice system, then both it and the commentary would have said that. The commentary explains at length the reasoning behind a number of decisions that the drafters made in crafting the hindering prosecution statute. Nothing in that discussion even hints at the idea that the drafters intended the statute to reach conduct that interferes with the ability of the government to bring juveniles to justice in the juvenile justice system.
I am confident that the drafters of the Model Penal Code and of the Oregon Criminal Code gave little or no attention to the way in which the criminal code would apply to juveniles or would intersect with the juvenile code. Both we and the Supreme Court therefore have been required to make sense of a number of criminal statutes that were drafted without a focus on how they would apply to juveniles. The majority has done commendable work in interpreting the terms "crime" and "offense" in a way that recognizes that the criminal and juvenile codes necessarily intersect and that juveniles can be subject to both codes. Nevertheless, the majority's interpretation of the hindering prosecution statute is flawed and cannot be sustained. If there is a problem with the statute regarding its application to people who hinder the state's ability to deal appropriately with juveniles in the juvenile system, then the problem is one that the legislature has to address. It cannot be addressed by interpreting the statute to mean something that it cannot be interpreted to mean.
In summary, the majority's decision is flawed because it completely ignores the language in the hindering prosecution statute that identifies the conduct that the statute proscribes. That language applies only to acts undertaken with an intent to hinder the process by which people are prosecuted in *205 the criminal justice system for criminal conduct. Properly understood, the applicable provision of the hindering prosecution statute applies to adults and juveniles who interfere with the discovery or apprehension of people who can be prosecuted in the criminal justice system for their conduct. It does not apply to adults or juveniles who interfere with the discovery or apprehension of people who cannot be prosecuted in the criminal justice system for their conduct. The juvenile who escaped from custody could not be prosecuted in the criminal justice system for his conduct. Consequently, the juvenile who interfered with the state's effort to discover or apprehend the other juvenile did not engage in conduct constituting the crime of hindering prosecution. The majority errs in concluding that he did.
I respectfully dissent.
WOLLHEIM, J., dissenting.
The majority holds that probable cause existed that youth had committed an act of "hindering prosecution" of a person who, by reason of his age, could not be prosecuted. I conclude that it is not possible to hinder the prosecution of a person who cannot be prosecuted due to his age because, as a matter of law, such a person has not committed a crime. The majority's holding is not consistent with Oregon law. The relevant statutes and case law support the conclusion that, as a matter of law, juveniles who are not eligible for waiver into adult court cannot commit crimes but, rather, commit delinquent acts. I would hold that the juvenile court erred in holding that there was probable cause to take youth into custody for hindering the "prosecution" of another youth based on conduct for which the other youth could not be tried in an adult criminal court. Accordingly, I respectfully dissent.
The majority contends that, although in some instances juveniles may not be held criminally responsible for their conduct, the conduct itself may still be considered "criminal" and, therefore, as a matter of law, juveniles are capable of committing "crimes." However, our holding in State v. Thompson, 166 Or.App. 370, 998 P.2d 762, rev. den., 331 Or. 192, 18 P.3d 1099 (2000), is fundamentally at odds with the majority's conclusion. In Thompson, we reversed a conviction for aggravated murder that had been based on a charge that the defendant had arranged the murder of a witness in a juvenile delinquency proceeding. The aggravated murder statute, ORS 163.095, authorized a charge for aggravated murder based on murder of a "witness in a criminal proceeding." Id. at 372, 998 P.2d 762 (emphasis added). We held, based on the structure and content of the juvenile code as well as the rationale of State ex rel. Juv. Dept. v. Reynolds, 317 Or. 560, 857 P.2d 842 (1993), that a juvenile delinquency proceeding is not a "criminal proceeding." In Thompson, we noted that a criminal proceeding was a proceeding that occurred in connection with a "criminal action," which was defined as an action in which a person was "`tried for the commission of an offense.'" Thompson, 166 Or.App. at 378, 998 P.2d 762 (quoting ORS 131.005(6) (1977), amended by Or. Laws 1997, ch. 801, § 101). "Offense" was defined as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law * * *," Thompson, 166 Or.App. at 378, 998 P.2d 762 (emphasis in original, internal citations and quotation marks omitted), and further defined as "a crime or a violation or an infraction," id. (internal citations and quotation marks omitted). We stated that "an `offense' is not defined as conduct alone, but conduct that also carries a sentence." Id. at 378-79, 998 P.2d 762 (first emphasis added; second emphasis in original).
The majority asserts:
"If anything, our analysis in Thompson supports the distinction we rely on in this case between criminal conduct and criminal responsibility for that conduct. We determined in Thompson that the meaning of `criminal proceeding' depended not on the person's conduct, but on whether the adjudication for that conduct could result in the imposition of a criminal sentence. 166 Or.App. at 378-79 [998 P.2d 762] (rejecting the state's argument in part because `it focuses only on the conduct' involved, not whether the adjudication for the conduct could `result in the imposition of sentences' (emphasis in original)). Implicit *206 in our analysis was our acknowledgment that a youth offender's conduct itself is criminal, which is the important point in this case."
192 Or.App. at 70 n. 10, 84 P.3d at 198 n. 10.
With respect, the majority's assessment of our analysis in Thompson is misleading. Thompson made no distinction between conduct and criminal responsibility for that conduct (or "sentences"). Rather, in Thompson, we found that "conduct" is necessarily linked to its appropriate punishment. Therefore, the majority's argument that, implicit in Thompson is the acknowledgment that a youth offender's conduct is criminal, is incorrect. In Thompson, we explained:
"In its strongest contextual argument, the state contends that, since juvenile adjudications occur for conduct that, if the person was an adult, would be a crime, juvenile adjudications are offenses in the context of a criminal action or criminal proceeding. See former ORS 419.476[1](a). We find that rationale fundamentally flawed because the state's argument focuses only on the conduct involved. However, an `offense' is not defined as conduct alone but conduct that also carries a sentence. Juvenile adjudications do not result in the imposition of sentences. See [State v.] Trice, 146 Or. App. [15,] 20-21[, 933 P.2d 345, rev. den., 325 Or. 280, 936 P.2d 987 (1997)] (juvenile disposition is not a `sentence' for purposes of ORS 137.123); ORS 419.505 (1977) (court shall order `disposition' of the case); ORS 419.507 (1977) (upon finding child within jurisdiction of the juvenile court, disposition can include placement of child on probation with conditions for restitution and placement of child in legal custody of Children's Services Division). By definition, juvenile conduct that results in juvenile adjudication cannot be an `offense' as used in the criminal code.
"That distinction is amplified by the juvenile code that provides context directly contrary to the state's argument. Former ORS 419.543 explicitly stated that an `adjudication by a juvenile court that a child is within its jurisdiction is not a conviction of a crime or offense.' Thus, the legislature was advised, when it enacted [the relevant aggravated murder statute], that juvenile proceedings did not concern crimes or offenses as those terms are considered in the criminal code."
166 Or.App. at 378-79, 998 P.2d 762 (emphasis in original; footnote omitted).
In Reynolds, the court concluded that a juvenile delinquency proceeding was not a criminal prosecution for purposes of the Oregon Constitution and, thus, that a youth being adjudicated in such a proceeding was not entitled to a trial by jury. The court determined that Oregon's juvenile delinquency system had, since its inception, been focused on the rehabilitation of delinquent youth rather than on punishment. Reynolds, 317 Or. at 568, 857 P.2d 842. The court concluded:
"[I]n the jurisdictional phase of a delinquency proceeding under ORS 419.476(1)(a), the issue is not whether the child should be punished for his or her conduct but, rather, whether the statutory grounds for jurisdiction have been established and, if so, what disposition is in the child's best interests. Juvenile courts are concerned with rehabilitation, not punishment. If the state wishes to prosecute a child criminally, it must do so by transferring the child to an adult criminal court."
Id. at 574, 857 P.2d 842 (emphasis added). The majority here, in a manner irreconcilable with the holding in Reynolds, concludes that, although the state could not prosecute Fowler criminally (he was not eligible for waiver into an adult criminal court), youth nonetheless hindered Fowler's prosecution.
Unless the Supreme Court was incorrect in Reynolds and we were incorrect in Thompson, the majority's conclusion here is not supportable. Thompson makes no distinction between criminal conduct and criminal responsibility for conduct. To the contrary, in that case, we defined conduct as criminal if that conduct carried with it criminal responsibility, e.g., a sentence. Thompson, 166 Or. App. at 378, 998 P.2d 762.
*207 The majority cites ORS 419C.005(1) in support of its distinction between criminal conduct and criminal responsibility. The majority argues that the Supreme Court's holding in Reynolds and our holding in Thompson are "beside the point. The question here is whether application of the hindering prosecution statute depends on the conduct of a person aided or on that person's criminal responsibility." 192 Or.App. at 70, 84 P.3d at 198. However, our analysis in Thompson that conduct and punishment for that conduct are inextricably linked informs the fact-specific issue in this case: whether probable cause existed that youth had committed an act of "hindering prosecution" of a person who, by reason of his age, could not be prosecuted. The way that the majority frames the issue in this case is incorrect in light of Thompson because, in framing the issue, the majority assumes too much namely, that conduct and responsibility are separate issues to be considered.
ORS 419C.005(1) provides, in part, that
"the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city."
(Emphasis added.) The majority argues that ORS 419C.005(1) "recognizes jurisdiction over two kinds of acts committed by persons under 18:(1) acts that are violations of law; and (2) acts that would be violations if committed by an adult." 192 Or.App. at 64, 84 P.3d at 195 (emphasis in original). However, the majority's argument relies on the assumption that the word "violation" in ORS 419C.005(1) means, exclusively, "crime." I find it significant that the word "act" rather than the word "crime" is used in ORS 419C.005. Contrary to the majority's argument, there is no evidence that the term "violation" in ORS 419C.005(1) is synonymous with the term "crime."
ORS 161.515 provides, in part, that "[a] crime is an offense" and ORS 161.505 provides, in part, that "[a]n offense is either a crime * * * or a violation, as described in ORS 153.008." (Emphasis added.) ORS 153.008 provides, in part:
"(1) * * * an offense is a violation if any of the following apply:
"* * * * *
"(b) The statute prescribing the penalty for the offense provides that the offense is punishable by a fine but does not provide that the offense is punishable by a term of imprisonment. The statute may provide for punishment in addition to a fine as long as the punishment does not include a term of imprisonment."
Therefore, the term "violation" has a broader meaning than the majority ascribes to it, given that "violation" also applies to civil penalties.
Furthermore, this case requires interpretation of a criminal statute, ORS 162.325, which contains the term "crime punishable as a felony." Nothing in the juvenile code, including ORS 419C.005(1), indicates that youths commit "crimes," much less crimes punishable as felonies.
Turning to the facts in this case, the police sought Fowler because a petition had been filed in juvenile court charging Fowler with an act that, if committed by an adult, would constitute second-degree escape. The juvenile proceeding concerning Fowler was neither a "criminal prosecution" nor a "criminal proceeding." See Reynolds, 317 Or. at 574, 857 P.2d 842; Thompson, 166 Or.App. at 382, 998 P.2d 762. Moreover, Fowler could not have been waived into adult court for prosecution for second-degree escape. See ORS 419C.352; ORS 419C.349; ORS 419C.361. It follows from Thompson that Fowler could not have committed a "crime punishable as a felony" because he could not have been either prosecuted in a "criminal prosecution" or punished; he could only be adjudicated for his conduct in a juvenile proceeding. Therefore, the majority's argument, that ORS 419C.005(1) does not depend on the aided person's criminal responsibility, 192 Or.App. at 70, 84 P.3d at 198, is incorrect, given that conduct is tied to responsibility.
The majority summarily dismisses the reasoning underlying all of those cases and concludes that a person commits a "crime" by *208 engaging in conduct of a particular nature. According to the majority, the commission of a crime does not depend on who engages in the conduct or whether that person is or can be held criminally responsible for the conduct. However, in Thompson, we specifically held that juvenile delinquency proceedings were not "criminal prosecutions" and that "matters considered within such adjudications cannot fairly be considered criminal." Thompson, 166 Or.App. at 382, 998 P.2d 762 (emphasis added).
I would therefore hold that the statutory definition of the word "crime" in the criminal code applies to ORS 162.325(1), which provides that "[a] person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony," that person takes certain steps to cause such hindrance. (Emphasis added.) Thus, in order to conclude that the officer had probable cause to believe that youth had violated the statute, it would need to be established that Fowlerthe person whose apprehension youth allegedly hinderedhad "committed a crime punishable as a felony." There simply is no logical way to arrive at a conclusion that Fowler committed a felony. Under the statutory definition of the word "crime" in ORS 161.515 and our interpretation of the word "crime" in Thompson, there is no distinction between conduct and criminal responsibility.
A crime is "an offense for which a sentence of imprisonment is authorized." ORS 161.515. A felony is a crime for which a person "may be sentenced to a maximum term of imprisonment of more than one year." ORS 161.525. Fowler could not have received a felony sentence of imprisonment, or, in fact, any sentence of imprisonment, for the conduct for which the police sought to apprehend him. Thus, he did not commit a crime. ORS 161.515; see Trice, 146 Or.App. at 20-21, 933 P.2d 345 (a disposition that a child is within the jurisdiction of the juvenile court following a juvenile adjudication is not a sentence). Yet to find that probable cause existed that youth hindered prosecution, the majority must conclude that Fowler's conduct constituted a "crime punishable as a felony." ORS 162.325(1). That conclusion simply is not reconcilable with the statutes or with the case law interpreting those statutes.
I respectfully dissent.
EDMONDS, J., joins in this dissent.
NOTES
[1] Some jurisdictions appear to have placed the age at 10 or 14. Oregon's earliest laws contained no special provisions concerning the age below which children were presumptively incapable of having criminal capacity, and thus Oregon appears to have followed the common-law rule setting the age at seven. See State v. Ewing, 174 Or. 487, 506, 149 P.2d 765 (1944); see generally Reynolds, 317 Or. at 566, 857 P.2d 842.
[2] For that reason, Judge Armstrong is wrong when he asserts that the legislature has given little or no attention to the way in which the criminal code would apply to juveniles or would intersect with the juvenile code section. 192 Or.App. at 81, 84 P.3d at 204-205 (Armstrong, J., dissenting).
[3] An exception to that rule exists for circumstances in which the state intentionally delays prosecution to avoid juvenile court jurisdiction. Scurlock, 286 Or. at 281-82, 593 P.2d 1159.
[4] Exceptions also arise when the crime incorporates an age requirement into its elements or when age is a defense. See ORS 163.165(1)(h) (assault in the third degree is committed when someone 18 years or older causes physical injury to someone 10 years or younger); ORS 163.435 (contributing to the sexual delinquency of a minor is committed by a person 18 years or older); ORS 163.345 (age as a defense to certain crimes). Such crimes and defenses are rare.
[5] ORS 161.290 provides:

"(1) A person who is tried as an adult in a court of criminal jurisdiction is not criminally responsible for any conduct which occurred when the person was under 12 years of age.
"(2) Incapacity due to immaturity, as defined in subsection (1) of this section, is a defense."
The legislature lowered the age of immaturity from age 14 to age 12 in 1995. See Or. Laws 1995, ch. 422, § 58.
[6] In 1972, the Juvenile Code Committee proposed certain revisions to the juvenile code, some of which were adopted over the next few years. The committee recommended retaining juvenile court jurisdiction over juveniles who commit "an act which is a violation, or which if committed by an adult would constitute a violation" of federal, state, or local law, explaining:

"[The proposed amendments retain] the distinction between acts which are a violation of a law and acts which, if committed by an adult, would be a violation of law. Some acts which have been deemed to be against society contain particular age limits for the establishment of criminal culpability. Thus, while the act would not constitute a violation of law because of the age of the child, the juvenile court, which is not a criminal court, should still be involved with this child since it is an act against society and therefore justifies state involvement with the child."
Commentary to Legislative Interim Juvenile Code Committee Proposed Revision, Laws Relating to Children, Final Draft and Report § 7, 11 (Oct 1972).
[7] The elements of hindering prosecution are set out in subsection (1) of ORS 162.325, which provides:

"A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefitting from the commission of the crime, the person:
"(a) Harbors or conceals such person; or
"(b) Warns such person of impending discovery or apprehension; or
"(c) Provides or aids in providing such person with money, transportation, weapon, disguise or other means of avoiding discovery or apprehension; or
"(d) Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person; or
"(e) Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person; or
"(f) Aids such person in securing or protecting the proceeds of the crime."
[8] As pertinent here, the ordinary meaning of "commit" is "do, perform." Webster's Third New Int'l Dictionary 457 (unabridged ed. 1993).
[9] Importantly, Judge Wollheim's analysis has implications that are particularly far-reaching. Several statutes in the criminal code depend on a person's status as someone who has "committed a crime." Consequently, if Judge Wollheim is correct that the commission of a crime depends on the attachment of criminal responsibility for the conduct that is prohibited by a criminal law, it is doubtful that anyone (adult or juvenile) can engage, for example, in solicitation of a crime (ORS 161.155(2)(a)), aiding and abetting the commission of a crime (ORS 161.155(2)(b)), or compounding the commission of a crime (ORS 162.335) when the person who commits the predicate crime is a juvenile.
[10] If anything, our analysis in Thompson supports the distinction we rely on in this case between criminal conduct and criminal responsibility for that conduct. We determined in Thompson that the meaning of "criminal proceeding" depended not on the person's conduct, but on whether the adjudication for that conduct could result in the imposition of a criminal sentence. 166 Or.App. at 378-79, 998 P.2d 762 (rejecting the state's argument in part because it "focuses only on the conduct" involved, not whether the adjudication for the conduct could "result in the imposition of sentences" (emphasis in original)). Implicit in our analysis was our acknowledgment that a youth offender's conduct itself is criminal, which is the important point in this case.
[11] Judge Armstrong acknowledges that the conduct prohibited by the hindering prosecution statute describes activities that interfere equally with the juvenile justice and criminal justice systems. 192 Or.App. at 80, 84 P.3d at 204 (Armstrong, J., dissenting). He then asserts that is "beside the point" because we must look to the intent element as context that narrows the range of the conduct described. He never explains why the reverse is not true: that is, why the breadth of the conduct described is not context for determining the scope of the intent element.
[12] We note, in addition, that the commentary does not mention the language on which Judge Armstrong relies in the mental state description (i.e., an intent to hinder in the "apprehension, prosecution, conviction or punishment" of a person who has committed a crime punishable as a felony). Nothing in the commentary suggests that the language was designed to specially characterize the criminal justice system, as opposed to more broadly encompass any intent to interfere with public justice.
[1] ORS 162.325(1) provides, as relevant:

"A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefiting from the commission of the crime, the person"
engages in various acts that prevent the state from discovering or apprehending the person who engaged in the felonious conduct. It is worth noting that the second clause in the quoted portion of the statutethe clause that refers to conduct that is intended to help a person profit or benefit from his felonious conductapplies to conduct that is not limited to that which interferes with the prosecution of someone in the criminal justice system. Consequently, that clause appears to apply to conduct that is not tied to the criminal justice system, which means that people would run afoul of it even if the people who commit the felonious acts are people who could not be prosecuted criminally for their conduct. I do not think that the difference between the two clauses affects the analysis of the first clause, because the words used in the first clause cannot be interpreted to say something that they do not say. I believe the majority's interpretation of the first clause is flawed because it fails to explain how the words used in that clause apply to conduct that interferes with the adjudication of juveniles in the juvenile court system.
[2] Both the legislature and the courts have consistently used different terminology to distinguish between the prosecution of adults for criminal offenses and the adjudication of juveniles for delinquent conduct. For example, ORS 419C.001 provides, in part:

"The Legislative Assembly declares that in delinquency cases, the purposes of the Oregon juvenile justice system from apprehension forward are to protect the public and reduce juvenile delinquency and to provide fair and impartial procedures for the initiation, adjudication and disposition of allegations of delinquent conduct."
The quoted sentence does refer to the apprehension of juveniles, as the majority notes, but it describes the remaining steps in the process used to address delinquent conduct in terms that are distinct from those used to describe steps in the process used to prosecute adults for criminal conduct. Oregon cases consistently have made similar distinctions in the terms used to describe the steps involved in the two systems. See, e.g., State ex rel. Juv. Dept. v. Reynolds, 317 Or. 560, 574, 857 P.2d 842 (1993); State v. Trice, 146 Or.App. 15, 18-21, 933 P.2d 345 (1997).